**GREEN et al. v. UNITED STATES.**

Circuit Court of Appeals, Eighth Circuit.
November 1, 1928.

No. 7862.

John T. Harley, of Tulsa, Okl. (A. F. Moss, of Tulsa, Okl., on the brief), for plaintiffs in error.

Frank Lee, U. S. Atty., of Muskogee, Okl. (Charles B. Selby and Edwin Brown, Special Asst. Attys. Gen., on the brief), for the United States.

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Plaintiffs in error were indicted in the District Court of the United States for the Eastern District of Oklahoma for conspiracy to defraud the United States in the matter of its governmental function with respect to the exercise of that function, acting through its designated and duly constituted officers, of the right, duty, and power to regulate, supervise, administer, and control the moneys under the control of the Department of the In-

terior, and particularly under the control and in the custody of the superintendent for the Five Civilized Tribes for Oklahoma at Muskogee; it being the duty of said superintendent to hold the restricted moneys of the Indian wards, under his charge and within his jurisdiction, in trust in accordance with the governmental policy of the United States of conserving, managing, controlling, supervising, disbursing, and distributing said funds in such manner, at such times, to such persons, in such amounts, and for such purposes, as in the judgment and discretion of said superintendent should be for the best interest and advantages of such wards of the government. The indictment charges that one Exie Fife, a full-blood restricted Creek Indian, had an allotment of land of 160 acres in section 15, township 14, in Creek county, Okl., from which there had been derived incomes, profits, rents, and royalties from and under an oil and gas mining lease covering said restricted allotment of land; that the same had been received into the hands of one Wallen, then the superintendent for said Five Civilized Tribes, and into the departmental office over which he presided, in trust for the uses and purposes provided by law and subject to the provisions thereof with reference to retention, disbursement, and distribution in accordance with the judgment and discretion of the officers of the department and particularly of said superintendent; that there was then in the hands of said superintendent restricted funds in the approximate amount of $250,000. It is further alleged that Exie Fife in October, 1922, married one Berlin Jackson, a white man; that on the 27th day of April, 1923, desiring separation, she entered into a property settlement and separation agreement with her said husband whereunder she agreed to pay, and Jackson agreed to accept, $10,000; thereafter they were to live separately and apart. The conspiracy is laid as having been entered into on or about said 27th day of May, 1923, and as continuing thereafter up to and including January 15, 1924. The object and purpose of said conspiracy was to deceive the said superintendent of the Five Civilized Tribes and lead him to believe that Berlin Jackson, the husband, had refused to accept less than $50,000 as a property settlement; that unless the superintendent would approve such a settlement, and permit that payment to be made from the restricted moneys of Exie Fife, the latter would be subjected to a criminal prosecution at the instance of her said husband, and would be driven either to kill him or to commit suicide. It was further to be represented generally that the expenditure of this money, which was to go entirely to the said Jackson in satisfaction of his insistent demand, was for the best interest of the ward. The foregoing representations were to be made to the superintendent by Exie Fife at the instance of plaintiffs in error. The ultimate object appears from the following facts: Exie Fife had employed the defendants Hazen Green, Ortho Green, and Thomas A. Chandler as her attorney, for the procurement of a decree of divorce against Berlin Jackson in the district court of McIntosh county, Okl. The said Kirk B. Turner, Martin E. Turner, Jack G. Harley, and Harry B. Parris, with knowledge of this fact, solicited and caused Jackson to permit them to appear for him as attorneys in said cause. All these attorneys then, for the purpose of procuring large fees in the premises, were to cause the aforesaid representations to be made to the superintendent in order to procure his consent to the distribution of such an extravagant amount of the restricted funds. The demands of the various conspirators finally settled upon the following distribution of the money to be paid. Jackson was to receive $15,000 instead of $10,000, the attorneys for Exie Fife were to receive $15,000, and the attorneys for Berlin Jackson $15,000; the balance of $5,000 was to be paid, and was paid, to W. M. Carr and Ollie Carr, father and son, for their services in persuading Exie Fife to accede to the demands of the conspirators and to make the representations alleged. At the trial the jury found the defendants guilty as charged and fines were imposed pursuant to the verdict.

Four errors are specified: (1) The court erred in overruling the motion of the defendants for a peremptory instruction of not guilty. This motion was based upon three grounds: (a) The insufficiency of the proof to sustain the indictment; (b) variance between the allegations and the proof as to the description of the restricted land from which the trust fund was derived; (c) "the variance in the allegations of the scheme of the conspiracy and the proof offered to sustain the scheme of the conspiracy and the proof offered to sustain the scheme alleged. Likewise, including the error of relying upon a different conspiracy than that alleged and set forth in the indictment." (2) Error in permitting the introduction in evidence of' statements made to C. R. Gideon, internal revenue agent. (3) Errors in the instructions of the court. (4) Prejudicial attitude of the court toward the defendants in the conduct of the trial.

■ 1. (a) Section 37 of the Criminal Code (18 USCA § 88) denounces conspiracies to defraud the United States in any manner or for any purpose. As said by the Supreme Court in Haas v. Henkel, 216 U. S. 462–479, 30 S. Ct. 249, 254 (54 L. Ed. 569, 17 Ann. Cas. 1112): "The statute is broad enough in its terms to include any conspiracy for the purpose of impairing, obstructing or defeating the lawful function of any department of government." See, also, United States v. Moore (C. C.) 173 F. 122; United States v. Lonabaugh (D. C.) 158 F. 314, 315; Jones v. United States (C. C. A.) 162 F. 417–425.

The proofs were amply sufficient to sustain the charge made and to support the verdict of the jury. In this connection it is claimed that there had been no agreement between Exie Fife and Jackson for the payment of $10,000 in full satisfaction of a property settlement. The testimony of the two principals and of the Carrs sufficiently presented this issue to the jury, and the record as a whole supports the view that such a contract was made and would have been consummated except for the intervention of the conspiracy charged.

■ (b) The variance assigned under this heading is that the indictment described the restricted land as in range 18 east, whereas the proofs show that it was in range 8 east. This is admitted by counsel to be a very technical point, but is insisted upon as fatal. However, it is to be noted that this action was not one in rem in which the precise description of the land involved was required; neither was the land itself a crucial element. It is conceded that the superintendent had restricted funds in his possession. It is agreed that they accrued from the land in question, and that defendants were not misled in this respect. Again, this is a conspiracy indictment and its allegations are shown to be sufficiently precise and accurate. The land is stated to be in section 15 of township 14 in Creek county, Okl. There is no range 18 in Creek county, but there is a range 8; consequently, the description, section 15 of township 14 in that county, sufficiently identifies the restricted land of Exie Fife. In an indictment for conspiracy the same degree of detail in stating the object of the conspiracy as if it were one charging the substantive offense is not required. Thornton v. United States, 271 U. S. 414–423, 46 S. Ct. 585, 70 L. Ed. 1013.

"Certainty, to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is requisite in stating the object of the conspiracy."

Williamson v. United States, 207 U. S. 425–447, 28 S. Ct. 163, 171 (52 L. Ed. 278). Here no essential element of the offense charged was omitted. See Anderson v. United States (C. C. A. 8) 260 F. 557, 558; Gerson v. United States (C. C. A. 8) 25 F.(2d) 49–52; Goldberg v. United States (C. C. A. 8) 277 F. 211; Hood v. United States (C. C. A. 8) 23 F.(2d) 472–474.

■ (c) This charge of variance is based upon the consideration that in the proofs it appears that at one stage of the conspiracy it was thought expedient to ask for $35,000 instead of $50,000, the amount ultimately agreed upon and charged in the indictment. Thereafter, the demands of Jackson and the two sets of attorneys were increased by $5,000 each. It is to be remembered that this conspiracy was a continuing one; its gist is the defrauding of the United States in the exercise of its governmental function through the superintendent of the Five Civilized Tribes, whereby that officer was fraudulently and by deception to be caused to distribute from the restricted funds of Exie Fife an amount of money greatly in excess of the necessities of the case and greatly in excess of what he otherwise would have consented to distribute. It is not a fatal variance that the ultimate sum named differed from sums demanded or contemplated at some stage of the conspiracy. When that conspiracy finally ripened, the sum demanded was that laid in the indictment. The overt acts respond to the changing features of the conspiracy in the process of its development. We think the indictment stated an offense and that the proofs were in substantial accord with the charge made. It follows that the motion for a directed verdict of not guilty was properly overruled.

■ 2. One C. R. Gideon, an Internal Revenue agent, under the instructions of the department made an investigation of the Exie Fife affair. Pursuant to such investigation he interviewed the defendants Thomas A. Chandler, Kirk B. Turner, and Hazen Green, and, under the guise of examining and correcting their income tax reports, obtained information concerning the amounts received by them in the division of the money paid out by the superintendent. His testimony was objected to upon the ground that the admissions were made subsequently to the consummation of the conspiracy, and further that the witness Gideon was not a competent witness. As to the first point, the application of this testimony was carefully and properly restricted to the three individuals involved. As to them it was competent. As to the sec-

ond point, the statements by the defendants to the revenue officer were made voluntarily. They were oral. No public records were introduced; the defendants were not placed on oath, nor were their statements reduced to writing. Whether Gideon, if called as a witness in a state court to testify to official matters might claim his privilege and decline to give testimony, is not here involved, nor are the rights of these defendants under the Fifth Amendment to the Constitution. Furthermore, this testimony of Gideon amounted to no more than tending to establish the apportionment of the $50,000 among the alleged conspirators, but this is conceded by counsel for plaintiffs in error; the contention being that the fees exacted were legitimate and reasonable in amount. In such case, section 269 of the Judicial Code (28 USCA § 391) is in point, to wit: "On the hearing of any appeal, certiorari, writ of error, or motion for a new trial in any case, civil or criminal the court shall give judgment after an examination of the entire record before the court without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

■ 3. Under this assignment it is complained that the court failed to instruct the jury fully and clearly as to the legal rights of Berlin Jackson in the restricted property of Exie Fife in the event of her death while Jackson was her husband. If these marital rights were material at all to this controversy, which is not conceded, it is to be noted that counsel for defendants requested no instruction upon this point. At the close of the charge the question was raised by exception; whereupon, the court stated the law in accordance with the contention of counsel and to their evident satisfaction.

4. An examination of the charge of the court convinces that the issues involved were fully and fairly presented for the consideration of the jury. It is urged in a general way that the defendants were not accorded a fair and impartial trial, in that the court participated to some extent therein and was captious in its criticism of counsel, more particularly counsel for the government. Its remarks to counsel for the defense appear to have been brought out by a somewhat vexatious attitude toward the court. It is complained that the court's criticisms of counsel for the government tended to create in the minds of the jury an impression that collusion existed between counsel for the government and for the defense. An examination of the record, which is said to support this view, does not, in our judgment, bear out that claim.

Incidentally, it is urged that Berlin Jackson had a right to employ attorneys and to pay them whatever he chose, even though the understanding was that the money was to go to him. But the gist of the action is that the deception practiced, which interfered with the function of government and perpetrated a fraud, procured the payment of an excessive sum to Berlin Jackson, whether for himself or for attorneys, and that if the true facts had been known no such payment would or should have been made.

We have carefully examined all the errors assigned and urged.

Finding no reverible error in the record, the judgment is affirmed.