UNITED STATES of America,
Plaintiff-Appellee,

v.

Ollie DUFF, Edith Williams and William Johnson, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard BOYD, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John R. AUSTIN, Defendant-Appellant.

Nos. 15346–15348.

United States Court of Appeals
Sixth Circuit.

June 3, 1964.

Milton R. Henry, Pontiac, Mich., on the brief; Lawrence W. Massey, Detroit, Mich., of counsel, for appellants Ollie Duff, Edith Williams and William Johnson.

Argued by Jack F. Gardner, Detroit, Mich., on the brief for appellant Richard Boyd.

Vivien E. Lynch, Detroit, Mich.; Goldfarb & Hudnut, Albert A. Goldfarb, Detroit, Mich., on the brief, for appellant John R. Austin.

Geraldine B. Ford, Asst. U. S. Atty., Detroit, Mich., Lawrence Gubow, U. S. Atty., James Francis Finn, Asst. U. S. Atty., Detroit, Mich., on the brief, for appellee.

Before MILLER, CECIL and PHILLIPS, Circuit Judges.

CECIL, Circuit Judge:

These appeals are from judgments of conviction of the defendants-appellants in the United States District Court for the Eastern District of Michigan, Southern Division. The defendants were all jointly indicted in count one of an indictment charging them with entering into a conspiracy (Section 371, Title 18, U. S.C.) to violate the narcotics laws.[1] The defendant Ollie Duff was charged in count two of the indictment for selling narcotics in violation of Section 4705(a), Title 26, U.S.C. The defendants Ollie Duff and Edith Williams were jointly indicted in count three for selling narcotics in violation of Section 4705(a), Title 26, U.S.C. The defendant Williams was charged as an aider and abettor in accordance with Section 2(a), Title 18, U.S.C. All of the defendants were convicted on the respective charges against them.

The substance of count one of the indictment is that all of the defendants en-

---

1. (Section 174, Title 21, U.S.C.; Sections 4704(a), 4705(a), 4741(a), 4742(a), 4744(a), Title 26, U.S.C.)

tered into an agreement whereby they would engage in the illicit and unlawful traffic in cocaine, heroin and marihuana. It is alleged that this illegal business was to embrace all phases of the narcotics traffic, such as receiving, concealing, buying, selling, distributing and possessing of the contraband articles.

It is alleged in the indictment that the conspiracy began on or about August 31, 1961, and extended to on or about February 9, 1962. Overt act No. 1 charges that Ollie Duff made a sale of 11.43 grams of heroin to a special employee of the bureau of narcotics on August 31, 1961. This is the sale which is the subject of count two of the indictment. During the progress of the trial counsel for the government conceded that the conspiracy did not start until September 1, 1961. The trial judge so instructed the jury. This then leaves the sale of August 31, 1961 as an isolated offense by the defendant Ollie Duff alone. No question is raised on the appeal of Ollie Duff concerning the conviction on this count of the indictment.

The second overt act charges that the defendant Ollie Duff aided and abetted by Edith Williams sold 2.50 grains of heroin to a special employee of the bureau of narcotics on September 1, 1961. This is the sale which is the subject of count three of the indictment. The defendant Ollie Duff does not contest this conviction by his appeal to this Court. He was given sentences of six years on each of these convictions, the sentences to run concurrently. The defendant Edith Williams claims that there is not sufficient evidence of her participation in this sale to have warranted the submission of the case to the jury charging her as an aider and abettor. This question will be considered later in this opinion.

It is alleged in the third overt act that Edith Williams held a conversation with a special employee of the bureau of narcotics relative to the purchase of heroin on September 28, 1961. According to the testimony, Cecil Cautious Oliver was the special employee referred to in these three overt acts. The first time that the defendants John R. Austin and Richard Boyd were in any way connected with the alleged conspiracy was on December 7, 1961. At this time they had a meeting with Ollie Duff and Edward Bradford. (Overt Act No. 4) Special employee Oliver did not know the defendants Austin and Boyd. The testimony does not disclose that the defendants Duff and Williams had any connection or relations with the defendants Austin and Boyd between September 28th and December 7th, a period of almost three months. Duff was living in Williams' apartment and they were associated together. Their relationship would hardly give rise to a conspiracy. Therefore, the evidence does not support the theory of the formation of a conspiracy between Duff and Williams any time between September 1st and December 7, 1961. If there was a conspiracy as alleged it had to have its inception in the meeting of December 7, 1961.

The one assignment of error common to all of the defendants involves the sufficiency of the evidence to take the case to the jury on the charge of conspiracy. In considering count one of the indictment, we will examine first the nature and circumstances of the meeting of December 7, 1961.

We approach the consideration of this meeting with the knowledge that two of the principal characters of the alleged conspiracy have a background of trafficking in narcotics. Ollie Duff made illegal sales on August 31st and September 1st, for which he was subsequently convicted in counts two and three of the indictment now before us and from which no appeals were taken. Edith Williams, in whose apartment Duff lives, was present and witnessed the sale of September 1st. Her knowledge of this sale was such as to raise a question of her participation in it for which she was indicted as an aider and abettor in count three of the indictment. On September 28th she held a conversation with a special employee of the United States narcotic bureau relative to a sale of heroin.

The December 7th meeting of the alleged conspirators was in the evening at the home of a friend of Austin on Kendall avenue. Among those present at the meeting were Edward Bradford, Ollie Duff, John Austin and Richard Boyd. Bradford, Duff and Boyd rode to the meeting in the car of Edith Williams. Austin was already there when the rest arrived. The alleged purpose of the meeting was to play chess. Edward Bradford, on behalf of the government, testified to the circumstances of this meeting. During the course of the evening the subject of narcotics was discussed. The subject arose in connection with the arrest of one Lester Ramsey for violation of the narcotics laws. The subject was discussed among Bradford, Duff, Boyd and Austin who were the only ones present at the time. The subject of money was discussed and some one, probably Duff, suggested that they could buy narcotics for $3800. Bradford testified that the substance of the discussion was that the narcotics were to cost $3800 and that all were to come back between December 18th and 21st with $4000. No one was to raise more than $1000. Bradford did not identify anyone with any particular part of the conversations. There is no evidence that this part of the alleged conspiracy was ever carried out.

■ We are of the opinion that there is sufficient evidence here to have warranted submitting the question of the formation of a conspiracy to the jury. The defendant Austin objects to the testimony of Bradford concerning the December 7th meeting on the ground that the witness' statements were general and did not identify the speakers in the conversations. The witness placed all four alleged conspirators together, with no one else present, and testified that all were to bring in four thousand dollars ($1000 each) for the purchase of narcotics. Conspirators do not usually make oral or written agreements of their illegal plans with exactitude. We are of the opinion that this evidence was competent and that the jury might find from it that each one participated in the plan.

We look to the further actions and conduct of the parties for executing the conspiracy thus formed. On December 13, 1961, Bradford went to Chicago with Ollie Duff in the Williams car. Bradford returned on a plane with a package which Duff had given him in Chicago. Bradford testified that he did not know what was in the package.

On January 14, 1962, Bradford accompanied by Edith Williams, in her car, drove Duff and Boyd to the Metropolitan Airport. Edith Williams had made reservations for Duff and Boyd, under the assumed names of A. Jones and R. Jones, for a flight from Detroit to New York. On January 16th, Bradford, again accompanied by Edith Williams, picked up Boyd and Duff at the airport and drove them to Edith Williams' apartment. At the apartment, in the presence of Boyd and Williams, Duff gave Bradford something called "cocaine" which he (Bradford) "sniffed" up his nose. Bradford testified that on January 16th he received a telephone call at the apartment of Duff and Williams from Austin saying that the house was being watched.

Duff was arrested on January 16th and on the 17th Bradford, Edith Williams, Duff, John Austin and a girl named Sidney met in Edith Williams' apartment. There was a discussion about narcotics, particularly concerning Duff's arrest and who made a sale against him.

The trial judge instructed the jury with reference to conspiracy, as follows: "A conspiracy is a combination of two or more persons by concerted action to accomplish some unlawful purpose or to accomplish a lawful purpose by unlawful means. * * *

"However, the evidence need not show that the members entered into any express or formal agreement, or that they directly, by words spoken, or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object or purpose was to be achieved.

What the evidence must show, in order to establish proof that a conspiracy existed, is that members in some way or manner, or through some contrivance, positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan."

This was a correct and proper instruction and we are of the opinion that there is sufficient evidence to have warranted submitting to the jury the question of whether Duff, Williams, Boyd and Austin were guilty of the crime of conspiracy as charged in count one of the indictment. It was within the province of the jury to determine the facts and we cannot substitute our judgment for that of the jury.

■ The defendant Austin claims further that the trial court erred in permitting Bradford to be declared a hostile witness. Bradford was a member of the alleged conspiracy. He had given a statement to government counsel and officers of the narcotic bureau. During his testimony it was obvious that he was a reluctant witness and was not testifying to what he knew. The trial judge declared him to be a hostile witness and permitted government counsel to cross-examine him. The purpose of cross-examination is to elicit the truth. We find nothing prejudicial to any of the defendants in the government's use of cross-examination of Bradford.

■ Another one of the assignments of error made by the defendant Austin is that the trial court erred in permitting the government to read a prior inconsistent statement of a witness into the record. The government called as a witness one Rollie Lee Stephens from whom a prior statement had been taken. Stephens had been released from the penitentiary only a few days before this statement was taken. The statement was damaging to the defendants Austin and Johnson.

Stephens in his testimony denied any knowledge of anything that would involve either Austin or Johnson in violation of the narcotics laws. On motion of government counsel, the trial judge declared the witness hostile and permitted cross-examination. The witness was then confronted with his prior statement. He admitted the answers were given as contained in the statement but claimed that they were falsely made at the time they were given and were not true. The truth, he alleged, was as he then testified at the trial. Counsel for the government read into the record each question and answer and asked the witness to verify the truth of the answer. The witness denied the truth of all of the answers that had any adverse effect on the defendants. He claimed that he gave false answers because he was intimidated by the narcotics officers under threat of being sent back to the penitentiary as a parole violator. The trial judge then permitted the government to call parole officer Wash and narcotic agent Frank to refute the witness' story that he was put under pressure to testify favorably to the government.

The trial judge properly instructed the jury, as follows: "The statements that this witness made previously were read to him and he admitted making the statements but denied their truth. The only purpose for permitting the statements to be read was to assist you in determining whether the witness is worthy or unworthy of belief, and such previous statements can in no way be considered by you as evidence for or against any of the defendants." The judge then went on to explain that the jury could not substitute a prior statement of the witness for any of his testimony on the witness stand which it disbelieved. He further explained that in spite of the impeachment the jury might believe or disbelieve all or any part of the testimony of the witness.

An examination of the testimony of the witness discloses that he gave no evidence which in any way involved any of the defendants in narcotics violations. It was of no consequence then whether the jury believed or disbelieved it. Since the jury could not substitute the prior statements as substantive evidence, the testi-

mony of the witness had no bearing on the case. The use of the statement was improper procedure and the trial judge should have stricken it from consideration of the jury or at least have admonished the jury at the time it was offered that it could not be considered.

The rule for the use of prior statements in a trial is well stated in United States v. Barnes, 319 F.2d 290, 291, C.A. 6. See Bridges v. Wixon, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103; United States v. Rainwater, 283 F.2d 386, C.A. 8; Brooks v. United States, 309 F.2d 580, 582, C.A.10. Another case directly in point is United States v. Block, 88 F.2d 618, C.A.2, cert. den., 301 U.S. 690, 57 S.Ct. 793, 81 L.Ed. 1347. In Bieber v. United States, 276 F.2d 709, C.A.9, relied upon by the government, the court distinguished the Block case.

The prior statement implicated the defendant Austin, as follows: Stephens and Johnson went to Austin's house and Austin gave Stephens a couple of dollars and some cocaine in tinfoil. Austin asked him (Stephens) what he was going to do and he said "nothing." Austin then said: "you know what you're going to do, you know we're dope peddlars." Austin also said: "in the event you want to do anything we'll talk." Stephens said: "I told him I wasn't going to do nothing."

We think this testimony was prejudicial to the defendant Austin. The instructions of the trial judge some two weeks later were not sufficient to eradicate from the minds of the jury the evidentiary facts contained in the prior statement. The instructions were not very specific and the jury could hardly help considering the content of the statement as substantive evidence.

The judgment of the District Court is reversed as to the defendant Austin and the case remanded for a new trial as to him. Having reached this conclusion it is not necessary to consider other assignments of error made by Austin and not already discussed.

An assignment of error on behalf of defendant William "Bud" Johnson is that the court erred in permitting the case to go to the jury against him on the first count of the indictment.

The three overt acts in the indictment which implicated Johnson are: 8. That on February 6, 1962, he furnished a quantity of marihuana to a special employee of the Narcotic Bureau. 9. That on February 7th he furnished a quantity of cocaine to a special employee of the Narcotic Bureau, and 10. That on February 9th he possessed 795 grains of marihuana. Overt acts Nos. 8 and 9 were not proved by competent evidence, and No. 10 was stricken by the trial judge as not being related to the alleged conspiracy.

According to the evidence, the first appearance of Johnson was on January 16th when he drove past agent Lewis three times, while Lewis was making a surveillance of the Williams' apartment. Again on February 7, 1962, when Lewis was making a surveillance of 3051 Bewick street, the home of Austin, Johnson and another man drove past in a Cadillac car and went into the home of Austin. Later Lewis followed the Cadillac to Gratiot street where the car was stopped. Johnson said: "If I hadn't made the U turn and saw you all that day, I wouldn't be in that conspiracy." The only other evidence against Johnson (relating to overt acts Nos. 8 and 9) is contained in the prior statement of Stephens which we have previously held to be incompetent.

We conclude that there is not sufficient evidence to have warranted submitting the case to the jury on the conspiracy count against Johnson. The judgment of the District Court as to Johnson is reversed and the case as to him is remanded with instructions to dismiss the charge.

One of the assignments of error made on behalf of Edith Williams is that government counsel argued facts which were not inferable from the evidence and that she was prejudiced thereby. In this respect counsel argued with refer-

ence to Edith Williams' car—that she bought it for the use of someone else and that she was responsible for the use that was made of the car. Her counsel objected on the ground that there was no testimony as to why she bought the car nor the purpose for which it was to be used. This argument was addressed to the charge against defendant Williams on the first count of the indictment. Some remarks ensued between court and counsel. The trial judge then said: "The jury will bear in mind what the testimony was, and they will rely upon their own recollection as to what the testimony was." This was a proper solution to the problem presented and we find no prejudice to the defendant Williams by reason of these remarks of counsel for the government.

█ Another objection to the argument of counsel involves the charge against the defendant Williams on the third count of the indictment. We think the evidence does not support a conviction against defendant Edith Williams as an aider and abettor and therefore find it unnecessary to discuss the evidentiary question. The sale on September 1st was made from her apartment. The telephone was in her name. Ollie Duff had shared the apartment with her for about one year. Oliver, a special employee of the bureau, telephoned Williams' apartment. The defendant Williams answered the telephone and handed it over to defendant Duff who invited him (Oliver) to come to the apartment. Oliver was admitted by Williams. The transaction was made in her presence. Upon leaving the apartment, Oliver asked about making future purchases. Duff inferred that he could deal with "Edie" (Williams). The evidence shows that defendant Williams was a passive spectator to the sale but took no part in it.

The judgment of the District Court as to the conviction of Williams on the third count of the indictment is reversed and the case remanded to the District Court with instructions to dismiss the charge.

The judgment of the District Court as to the defendants Duff, Boyd and Williams on count one of the indictment is affirmed. There being no appeal from the defendant Duff on his conviction on counts two and three of the indictment, the judgment of the District Court against Duff on these counts should be enforced.

The case is remanded to the District Court for the entry of a judgment consistent with this opinion.