**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nicholas CROWDER, Defendant-
Appellant.**

**No. 15613.**

United States Court of Appeals
Sixth Circuit.

Dec. 17, 1964.

Rehearing Denied June 14, 1965.

Edward A. Craig, Detroit, Mich., for appellant.

Sanford Rosenthal, Asst. U. S. Atty., Detroit, Mich., Lawrence Gubow, U. S. Atty., Paul D. Borman, Asst. U. S. Atty., Detroit, Mich., for appellee.

Before MILLER, CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Defendant Nicholas Crowder appeals from conviction under an indictment charging him with conspiracy to transport and to cause to be transported in interstate commerce twelve specified stolen and forged Bondified Money Orders on the City National Bank and Trust Company, Chicago, in violation of 18 U.S.C.A. §§ 371, 2314. Neither of the grounds urged for reversal is meritorious.

■ An agent of the Federal Bureau of Investigation testified that Crowder had admitted to being involved with a large number of "very hot" money orders. The agent identified 235 money orders offered in evidence as those he had seized in an apartment on April 13, 1962. The occupant of the apartment, one Donna Brown, testified that during the early hours of a day in April, 1962, the defendant-appellant, Crowder, and others had been engaged in filling in blank money orders. She said that these money orders were seized the day after the above activity had taken place in the apartment. Appellant contends that because the witness Brown expressed her recollection that the filling in of the money orders occurred about April 25 to 28, which dates were later than the day on which the FBI agent had seized them, her evidence should not have been received as corroboration of Crowder's involvement with the money orders seized by the agent. The witness Brown, however, expressly acknowledged that she could "not exactly" remember the date, and at one point stated that the orders taken to her apartment were seized "the following day." It is quite clear that the jury could properly interpret her testimony as relating to the night before the money orders were seized.

A more serious contention raised by Crowder is that none of the twelve money orders specified in the indictment were

covered by the evidence. The agent who had seized the 235 money orders in the Brown apartment identified them as being contained in a package which was introduced as an exhibit. It was shown that these orders fell into a series between numbers AY–562,211 and AY–562,400 and between numbers AY–578,601 and AY–578,800. All but one of the numbers specified in the indictment would fall within these series, but it was testified that "there were numbers skipping in between." The record was then left without specific proof that the particular numbers set forth in the indictment were in fact among those in the package. Accepting that under such circumstances there was a failure of proof in this regard, we are faced with the questions whether, assuming the offense as charged has otherwise been made out, this variance from the indictment was fatal to the verdict and judgment of conviction, or amounted, as claimed by appellant, to a failure to prove the corpus delicti.

■ The Federal Rules of Criminal Procedure provide that "[a]ny * * * variance which does not affect substantial rights shall be disregarded." R. 52 (a). This Court has long ago announced the test to be followed in assessing the effect of a variance:

> "the controlling consideration should be whether the charge was fairly and fully enough stated to apprise defendant of what he must meet, and to protect him against another prosecution, and whether those particulars in which the proof may differ in form from the charge support the conclusion that respondent could have been misled to his injury." Harrison v. United States, 200 F. 662, 673 (CA 6, 1912).

See also Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314, 1318 (1935).

■ Turning first to the question whether Crowder could have been misled by the specification in the indictment, it is difficult to imagine how the variance could have injured him unless his defense was that he had conspired only with respect to money orders bearing different serial numbers. Compare Cortez v. United States, 328 F.2d 51 (CA 5, 1964); Strauss v. United States, 311 F.2d 926 (CA 5, 1963), cert. denied, 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963); United States v. McCormick, 309 F.2d 367 (CA 7, 1962), cert. denied, 372 U.S. 911, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963); Johnson v. United States, 195 F.2d 673 (CA 8, 1952); United States v. Cox, 147 F.2d 587 (CA 7, 1945), cert. denied, 325 U.S. 858, 65 S.Ct. 1194, 89 L.Ed. 1978 (1945); United States v. Drexel, 56 F.2d 588 (CA 2, 1932); Green v. United States, 28 F.2d 965 (CA 8, 1928); Israel v. United States, 3 F.2d 743 (CA 6, 1925). Instead, Crowder's defense was that he had refused to have anything to do with any of the bondified money orders. We believe that the nature of the defense offered is crucial to the claim of prejudice, and that the defense offered in the present case obviates the possibility of any prejudice from the variance.

■■ Turning to the need for protecting Crowder against subsequent jeopardy for the same offense, it appears to be settled that the evidence actually offered at the trial may be adduced to demonstrate the precise circumstances upon which his conviction rested. Russell v. United States, 369 U.S. 749, 82 S. Ct. 1038, 8 L.Ed.2d 240 (1962); Bartell v. United States, 227 U.S. 427, 433, 33 S.Ct. 383, 57 L.Ed. 583, 585 (1913); Dunbar v. United States, 156 U.S. 185, 191, 15 S.Ct. 325, 39 L.Ed. 390, 392 (1895); United States v. Dickerson, 337 F.2d 343, 347 (CA 6, 1964); Case v. United States, 6 F.2d 530, 531 (CA 9, 1925); United States v. Merrick, 207 F. Supp. 929, 931 (W.D.Mo.1962). Thus the fact that the indictment formally relates only to money orders not specifically identified does not threaten to undermine Crowder's protection against subsequent prosecution for the same offense.

Federal criminal procedure has evolved far from the formalism which once might have held the present variance fatal. We

decline to hold that the situation discussed calls for reversal of Crowder's conviction.

Judgment affirmed.

## ON PETITION FOR REHEARING

### PER CURIAM.

Appellant's petition for rehearing suggested our consideration of points not directly raised or argued in the District Court or in this Court. We, nevertheless, took notice of them and ordered further argument on the following questions.

1) Does Plaintiff-Appellee contend that conviction may be based solely on proof of conduct of defendant following return of the indictment?

2) If conviction may not be so based, may proof of such conduct be adduced to corroborate proof of conduct occurring prior to return of the indictment?

3) If such proof may be used as suggested in question 2, was there sufficient proof of preindictment conduct in the present case to warrant such corroboration?

We have considered the arguments directed to these points and conclude that the requested rehearing should be denied.

1) *May conviction rest solely on postindictment conduct?*

■ The government concedes that testimony as to Crowder's activities in Donna Brown's apartment on April 13, 1962, would not, standing alone, be sufficient to convict him of participating in the conspiracy charged in the indictment which had been returned on April 12, 1962, the preceding day. It is indeed proper to concede that a trial for later misconduct could not be based on an indictment for an offense not yet committed when the indictment was returned. This is good law and good sense. Landfield v. United States, 9 F.2d 315, 316 (CA9, 1925); Goulson v. United States, 16 F.2d 44 (CA6, 1926).

2) *May postindictment conduct corroborate evidence of the preindictment*

*criminal conduct charged in the indictment?*

■ The government's proof as to Crowder's criminal conduct prior to the indictment consists of admissions made by Crowder after the indictment was returned. It is also asserted that we should accept as substantive evidence a statement given to an FBI agent by one Williams, an alleged co-conspirator, asserting facts which, if true, would show Crowder's guilt. Williams, however, repudiated the statement as "all a fictitious lie" when called as a witness at Crowder's trial. The statement was admitted to impeach Williams' trial testimony. We are aware of scholastic agreement in favor of allowing use of such impeaching statements to provide substantive proof. See 3 Wigmore, Evidence, § 1018 (3d Ed.1940) and the Second Circuit's relevant discussion in United States v. DeSisto, 329 F.2d 929, 932–34 (1964), cert. denied, 377 U.S. 979, 85 S.Ct. 1885, 12 L.Ed.2d 747 (1964). But we are not persuaded that we should now abandon the traditional rule that such statements do not supply needed substantive testimony. We have so held in Green v. Baltimore & Ohio RR, 337 F.2d 673, 675 (CA 6, 1964); United States v. Duff, 332 F.2d 702, 706–707 (CA6, 1964).

The government's case, therefore, is supported only by admissions made by Crowder when he was arrested following the indictment. The arresting officer, an FBI agent, testified that Crowder then told of being offered and refusing to receive the stolen money orders around Christmas time of 1961 (the indictment alleged that this traffic in the stolen orders began "on or about January 15, 1962, and continuing to on or about April 2, 1962"). This admission was supplemented by the following:

"Crowder advised that some time thereafter all of the money orders came into his possession. These money orders were at that time approximately 340 to 360 in number, and approximately 100 of them were made out with a check protector. * * * He said he was afraid of

them because he said he saw that they were going through a bank which is a member of the Federal Reserve. When asked if he sold or gave any of these money orders to Al Berger or Chris Williams, he smiled and didn't answer the question. * * * Crowder stated that *shortly after they commenced being passed,* the money orders, shortly after in January, 1962, they became very hot and nobody wanted to touch them. * * * After he was released on bond * * * Whitney came to him, Crowder, and wanted *some more* of the money orders. * * * Crowder stated he refused to give him any of the money orders. About this time, Crowder stated, all the remaining money orders came into his possession again and that he put them in a new suitcase, standard size, tan in color, which he described as being approximately three feet long, about eighteen to twenty inches deep, and ten inches wide. He stated he put these money orders in the suitcase and took it to a girl he knew on Ferris Street. He said he did not want those in his home *and that he could easily tell people the address of the girl on Ferris Street."* (Emphasis supplied.)

We are satisfied that the inferences that could be drawn from the content of such admissions would, if corroborated, be substantive evidence of Crowder's guilt. As admissions, however, they needed corroboration. Wong Sun v. United States, 371 U.S. 471, 488–491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954). We see no reason why the testimony of the witness Brown who observed Crowder carrying two cans containing the money orders up to her apartment on April 13, the day after the return of the indictment, and the activities then carried on to prepare the money orders for negotiation, should not be received as corroboration. These were the money orders that were seized later that day upon search of the Brown apartment.

3) *Was there sufficient proof of preindictment conduct to warrant the corroboration?*

Our discussion above suggests our affirmative answer to this question. Crowder's admission to being in possession of the stolen money orders and his knowledge that some of them were being "passed" (having said that he had possession of *all* of them at various times clearly implies that those that were passed came from him) made the identification of Crowder as the conveyor of what remained of them to the Brown apartment quite relevant and logical corroboration. The admission plus the corroboration made a case for the jury.

The petition for rehearing is denied.