SEIDL, J.
*497 ¶1 Alexander Schultz appeals a judgment, entered upon his guilty plea, convicting him of second-degree sexual assault of a child contrary to *498 WIS. STAT. § 948.02(2) (2015-16).[1] He also appeals an order denying postconviction relief. The issue on appeal is whether the State's prosecution of Schultz for sexually assaulting a child "on or about October 19, 2012" violated Schultz's constitutional right to be free from double jeopardy because he was previously prosecuted for, and acquitted of, the repeated sexual assault of the same child "in the late summer to early fall of 2012."
¶2 To resolve this issue, we must determine the proper test to ascertain the scope of jeopardy when it is unclear whether successive prosecutions are the same in fact. Schultz argues that we should look to a reasonable person's understanding of the scope of jeopardy at the time jeopardy attached in the first prosecution, and disregard *869 all proceedings after that time. The State responds that we should look to how a reasonable person would understand the scope of jeopardy in light of the entire record in the first prosecution, including the trial.
¶3 We agree with the State and conclude that the proper test to ascertain the scope of jeopardy is to look at the entire record in the first prosecution. We further conclude that a reasonable person familiar with the facts and circumstances of the entire record in the first prosecution against Schultz would understand "early fall of 2012" to mean no later than September 30, 2012. Accordingly, Schultz's subsequent prosecution *499 for a sexual assault on October 19, 2012, did not violate his constitutional right to be free from double jeopardy. We therefore affirm.
BACKGROUND
¶4 In December 2012, City of Merrill police officer Matthew Waid learned that fifteen-year-old Melanie[2] was pregnant. He began a sexual assault investigation and discovered that Melanie had sexual intercourse with then eighteen-year-old Dominic Beckman in mid-October 2012. Waid asked Melanie if she had had intercourse with anyone else prior to this incident with Beckman. She responded that approximately one month before having intercourse with Beckman, she had intercourse with then twenty-year-old Schultz.
¶5 In a follow-up interview, Melanie made additional disclosures to Waid regarding her sexual relationship with Schultz. She stated that she and Schultz had sexual intercourse "more than five times" and that the "intercourse started at the middle of the year of 2012 and had gone on for a couple of months." Accordingly, the State charged Schultz with repeated sexual assault of a child. In that case, an Information alleged that Schultz had sexually assaulted Melanie at least three times "in the late summer to early fall of 2012."
¶6 One day prior to the start of trial, Schultz filed a motion to "permit the introduction of the fact of [Melanie's] pregnancy and the fact that she claimed Dominic Beckman was the father of her child." The next day, prior to swearing in the jury, the circuit court heard arguments on this motion. The State moved for *500 a continuance of the trial, arguing that, pursuant to Wisconsin's rape shield statute,[3] the court would need to conduct a hearing before allowing evidence of Melanie's pregnancy to be introduced at trial. The State also stated that it had not yet received the results of a paternity test from Melanie, but her pregnancy was not relevant because "it had been in the reports for months" that "Dominic Beckman [was] imputed the father of the victim's child."
¶7 Defense counsel responded that "up until [the Friday before trial], I was under the assumption that ... the complainant's pregnancy was going to be part of this case." However, counsel then told the circuit court that Schultz "would like to proceed today" and withdrew the motion to introduce evidence concerning Melanie's pregnancy. Consequently, the jury was sworn in and the trial began.
¶8 At trial, Melanie testified that she began having sex with Schultz "[s]ometime between July and August" 2012. She said that she could not recall how many times they had sex, but it was definitely more than five times. She also testified that she *870 and Schultz broke up in the beginning of September 2012.
¶9 The jury ultimately acquitted Schultz. Five days later, Melanie informed the State that she had received her paternity-test results. The results showed a "99.99998" percent probability that Schultz was the father of Melanie's child. The State then obtained Melanie's medical records, which indicated that her conception date was on or about October 19, 2012.
¶10 Based on this new information, the State charged Schultz with second-degree sexual assault of a child. Schultz filed a motion seeking to dismiss the *501 charge on the grounds that his prosecution violated his constitutional right to be free from double jeopardy. Schultz argued that October 19, 2012, was a date in the "early fall of 2012," and therefore he had already been charged with, and acquitted of, sexually assaulting Melanie on October 19, 2012.
¶11 The State responded by arguing that in its first prosecution of Schultz, Melanie testified that she had stopped having sex with Schultz the month prior to October 2012-in other words, Melanie did not testify that she had sex with Schultz after September 2012. The State argued that its first prosecution of Schultz therefore concerned "sexual assaults which occurred at different times" than its second prosecution, and, as a result, "double jeopardy does not apply."
¶12 The circuit court denied Schultz's motion. The court relied upon transcripts of Melanie's trial testimony and made a finding that "the timeframe [Melanie] testified to was July, and August, and September of 2012." The court concluded that "Schultz was not charged and not tried for an alleged sexual assault that occurred on October 19, 2012."
¶13 Consequently, Schultz pled guilty to, and was convicted of, second-degree sexual assault of a child. He subsequently filed a motion seeking postconviction relief, again arguing that his prosecution violated his constitutional right to be free from double jeopardy. The circuit court denied the motion in a written order, concluding that it had "already denied a similar motion for dismissal ... [and Schultz] has not presented any new evidence." Schultz now appeals.
*502 DISCUSSION
¶14 Schultz argues that his second prosecution violated his right to be free from double jeopardy. A defendant is guaranteed the right to be free from double jeopardy by the Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution. State v. Steinhardt , 2017 WI 62, ¶13, 375 Wis.2d 712, 896 N.W.2d 700. Whether this right has been violated presents a question of law that we review de novo. Id. , ¶12.
¶15 The right to be free from double jeopardy provides three protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. Id. , ¶13. In this case, Schultz argues that the State violated his right to be free from a second prosecution for the same offense after acquittal.
¶16 For purposes of a double jeopardy analysis, separate prosecutions are for the "same offense" if the charged offenses are identical both in law and in fact. Id. , ¶14. The parties do not dispute that the offenses charged against Schultz are identical in law, as the offense of second-degree sexual assault of a child is a lesser-included offense of repeated sexual assault of a child. See *871 State v. Stevens , 123 Wis.2d 303, 321-22, 367 N.W.2d 788 (1985). Rather, they dispute whether the charged offenses were identical in fact. *503 ¶17 Offenses are different in fact if they are either significantly different in nature or are separated in time. State v. Eaglefeathers , 2009 WI App 2, ¶8, 316 Wis.2d 152, 762 N.W.2d 690 (2008). When the State charges a defendant with the repeated sexual assault of a child, subsequent prosecutions against that defendant are not separated in time if they allege a sexual assault of the same child that occurred "during the same time frame" as the assaults alleged in the original prosecution. State v. Fawcett , 145 Wis.2d 244, 255, 426 N.W.2d 91 (Ct. App. 1988). Here, the parties dispute whether the scope of jeopardy in the first prosecution-specifically, the time frame of "late summer to early fall 2012"-includes the alleged date of the sexual assault in the second prosecution, October 19, 2012.
¶18 To resolve this dispute, we must first address a threshold question: namely, how does a court ascertain the scope of jeopardy when the charged timeframe is ambiguous?[4] The parties point to no *504 Wisconsin cases that address this issue, and our own review of the case law likewise reveals no controlling authority. Thus, it is an issue of first impression in Wisconsin.
¶19 Schultz first argues that we should consider the language of the charging document and determine how a reasonable person, familiar with the facts and circumstances of the case, would construe that language at the time jeopardy attaches.[5] Further, Schultz argues that any proceedings that occur after jeopardy attaches are irrelevant to this analysis and cannot be considered. The State agrees with the first part of Schultz's proposed test, but it argues that proceedings occurring after jeopardy attaches are relevant and may be considered to clarify any ambiguity in the language of the charging document. For the following reasons, we agree with the State.
¶20 First, the federal case upon which Schultz primarily relies, United States v. Olmeda , 461 F.3d 271 (2d Cir. 2006), does not support his position. The Olmeda court held:
To determine whether two offenses charged in successive prosecutions are the same in fact, a court must ascertain whether a reasonable person familiar with the totality of the facts and circumstances would construe the initial indictment, at the time jeopardy attached in the first case, to cover the offense that is charged in the subsequent prosecution.
Id. at 282. The Second Circuit then stated that this objective inquiry "will require examination of the plain language of the indictments in the two prosecutions, as *872 *505 well as the entire record of the proceedings." Id. (emphasis added). The court further explained that proceedings that take place after jeopardy attaches "are relevant to double jeopardy analysis only insofar as they assist an objective observer in clarifying any ambiguities in the scope of the [charging document] at the time jeopardy in fact attached." Id. at 288. Thus, Olmeda actually undermines Schultz's proposed test.
¶21 Moreover, as the State correctly notes, a test that considers the entire record of a prosecution to ascertain the scope of jeopardy is consistent with the approach of federal appellate courts outside the Second Circuit. For example, the Seventh Circuit has held:
There can be no doubt that [a charging document] plays a part in protecting a defendant against double jeopardy, however, the defendant's attack on the present [charging document] falls wide of the mark since it is the record as a whole that protects an accused from being "twice put in jeopardy of life or limb."
United States v. Roman , 728 F.2d 846, 853 (7th Cir. 1984) ; see also United States v. Castro , 776 F.2d 1118, 1123 (3d Cir. 1985) ("The scope of the double jeopardy bar is determined by the conviction and the entire record supporting the conviction."); United States v. Hamilton , 992 F.2d 1126, 1130 (10th Cir. 1993) ("[F]or purposes of barring a future prosecution, it is the judgment and not the indictment alone which acts as a bar, and the entire record may be considered in evaluating a subsequent claim of double jeopardy.") (citation omitted).
¶22 Second, we agree with the State that WIS. STAT. § 971.29 -the statute addressing the amendment of a charge-supports our adoption of a test that looks to the entire record to clarify any ambiguity regarding *506 the scope of double jeopardy. Section 971.29(2) provides:
At the trial, the court may allow amendment of the complaint, indictment or information to conform to the proof where such amendment is not prejudicial to the defendant. After verdict the pleading shall be deemed amended to conform to the proof if no objection to the relevance of the evidence was timely raised upon the trial.
Our supreme court has held that the second sentence of § 971.29(2) operates to "deal with technical variances in the complaint such as names and dates ." State v. Duda , 60 Wis.2d 431, 440, 210 N.W.2d 763 (1973) (emphasis added). Thus, when a case proceeds to trial, "ambiguities ... in an indictment or [I]nformation, are cured by verdict." Id. at 441, 210 N.W.2d 763 (citation omitted).
¶23 Schultz argues, for several reasons, that the State's reliance on WIS. STAT. § 971.29(2) to support a test that considers the entire record when clarifying an ambiguous charging document is misplaced. First, Schultz argues that by focusing on the second sentence of § 971.29(2), the State ignores the requirement of the first sentence that a court should only allow an amendment to a pleading document "where such amendment is not prejudicial to the defendant." Sec. 971.29(2). He further argues that the consideration of evidence introduced after jeopardy attached in his case prejudiced him because it narrowed the scope of jeopardy that applied to his case.
¶24 We reject Schultz's argument because it conflates the clarification of an ambiguous timeframe with the narrowing of an unambiguous one.[6] The *507 State's reliance *873 on WIS. STAT. § 971.29(2) to support a test that considers the entire record applies only to the former, not the latter. For instance, if the Information in Schultz's first prosecution had alleged that his crimes occurred during the time period from July 2012 to October 2012, the evidence introduced at trial could not be used to narrow the scope of jeopardy to only July 2012 to September 2012 and thus permit the State to try Schultz for the October 2012 offense in a subsequent prosecution. The subsequent prosecution would be barred because, under those circumstances, a reasonable person familiar with the totality of the facts and circumstances would construe the initial complaint, at the time jeopardy attached in the first prosecution, to cover the offense that is charged in the subsequent prosecution.
¶25 However, in situations like here, where the phrase "early fall" is ambiguous, it is appropriate to look at the entire record to clarify the meaning of that phrase as it was used in the Information. And Schultz's argument that this ignores the prejudice analysis required by the first sentence of WIS. STAT. § 971.29(2) does not account for the difference between the first and second sentences of the statute. Specifically, the first sentence applies during trial, and allows for the exercise of discretion by the circuit court to weigh the prejudice to the defendant in granting the amendment request. Conversely, the second sentence applies after verdict and does not allow for the exercise of discretion by the court. Instead, it states "the pleading shall be deemed amended to conform to the proof." Id. Thus, if either party fails to clarify an issue or object to dates used at trial, that party forfeits any objection when the complaint is amended after the verdict.
*508 ¶26 Moreover, when the alleged timeframe as charged is ambiguous, the consideration of evidence introduced at trial does not prejudice a defendant by stripping away constitutional protections. Rather, it enhances constitutional protections by allowing a court to ascertain the actual jeopardy to which a defendant was exposed in a prior prosecution. To that end, we note that by allowing a court to review the entire record to determine the scope of jeopardy, a defendant as well as the State has the right to argue that a subsequent prosecution is barred by evidence introduced after jeopardy attached at a previous trial.
¶27 Relatedly, Schultz argues that reliance on WIS. STAT. § 971.29(2) would lead to an absurd, erroneous, and unconstitutional construction of that statute. This argument fails for the same reason as Schultz's first argument: it rests on the faulty premise that consideration of evidence after jeopardy attaches can be used to narrow an unambiguous scope of jeopardy. Again, this notion is incorrect, and we do not hold so here. Instead, we hold only that evidence introduced after jeopardy attaches may be considered to clarify an ambiguity related to the scope of jeopardy that existed at the time jeopardy attached.
¶28 Finally, Schultz points to United States v. Crowder , 346 F.2d 1 (6th Cir. 1964), which he insists is "particularly instructive" as to why facts adduced at trial cannot narrow the scope of jeopardy. In Crowder , the defendant was prosecuted for conspiracy to transport stolen and forged money orders in interstate commerce. Id. at 2. The indictment filed against the defendant specifically listed only twelve money orders that the defendant was alleged to have possessed, even though 235 money orders had been recovered and *509 "offered in evidence." Id. at 2-3. The defendant raised *874 a due process challenge, arguing that the indictment, by failing to list all 235 money orders, failed to protect him "against subsequent jeopardy for the same offense." Id. at 3. The Sixth Circuit rejected this argument, concluding that the record as a whole, which included evidence of all 235 money orders, protected against a subsequent prosecution related to all of the money orders, not just the twelve listed in the indictment. Id.
¶29 In other words, the Sixth Circuit held that the scope of jeopardy that applied to an unambiguous set of facts in the record-the 235 money orders-could not be narrowed, even though the government focused only on twelve of those money orders in prosecuting its case. That situation is unlike here, where the charged timeframe was ambiguous. Accordingly, Crowder has no bearing on Schultz's case.
¶30 To summarize, we conclude that the proper test to ascertain the scope of the jeopardy bar when the charging language of an Information is ambiguous is to consider how a reasonable person familiar with the facts and circumstances of a particular case would understand that charging language. To make this determination, it is proper to consider the entire record, including proceedings that take place after jeopardy attaches and the evidence introduced at trial. Having articulated the proper test, we now apply it to the facts of Schultz's first prosecution and conclude that a reasonable person familiar with the circumstances of that prosecution would not understand the phrase "early fall of 2012" to include any dates beyond September 30, 2012.
*510 ¶31 We begin with the original complaint in Schultz's first prosecution. Attached to that complaint was a police report written by officer Waid on December 4, 2012. Waid wrote that he was investigating an alleged sexual assault of Melanie by Beckman-which he then believed resulted in Melanie's pregnancy-that occurred in "early to mid-October." Waid then wrote that he asked Melanie if she had had sexual intercourse with anyone prior to this incident, and she told him she had had intercourse with Schultz "approximately one month before" the incident with Beckman-i.e., in September 2012.
¶32 Next, on the first morning of trial, before the jury was sworn, the State informed the circuit court that although Melanie had not yet received the results of a paternity test, it had been "imputed ... for months" that Beckman was the father of Melanie's child. The only reasonable inference from this statement is that, consistent with the complaint, the State was not alleging that Melanie had had sex with anyone besides Beckman, including Schultz, in early-to-mid-October.
¶33 Finally, as the circuit court found in its oral decision denying Schultz's postconviction motion, "the timeframe that [Melanie] testified to [at the first trial was July, and August, and September of 2012." In his brief-in-chief, Schultz stated that Melanie's testimony regarding her sexual history with Schultz was "very imprecise," and he appeared to argue that the circuit court's finding in this regard was clearly erroneous. However, in his reply brief, Schultz conceded that the State "failed to present any evidence of sexual assaults by Schultz for the month of October 2012."
*511 ¶34 Based on all of the above evidence, we conclude that a reasonable person, familiar with the facts and circumstances of the first prosecution against Schultz, would not consider the phrase "early fall of 2012" to include October 19, 2012. There is no indication in the record that the State ever alleged that Schultz and Melanie had sexual intercourse in October 2012. In fact, the State did not even believe it possible that *875 Schultz had impregnated Melanie in that month. Only after the trial did the State become aware that a paternity test showed a "99.99998" percent chance that Schultz had impregnated Melanie on or about October 19, 2012. The State then charged him for that offense. The alleged date of commission for this charge was separated in time from the charges in the first prosecution and, therefore, was not barred by double jeopardy.
¶35 We stress that, in this case, we adopt a test that allows a circuit court to clarify an ambiguity that exists in a charging document for purposes of a retrospective double jeopardy analysis. We thus emphasize an important point, lest our decision be read to encourage the use of ambiguous charging language to manipulate double jeopardy protections in future prosecutions: well-established law in Wisconsin already provides a remedy for a defendant facing an ambiguous charge. Specifically, a defendant may move for the dismissal-or, in the alternative, move to make more definite and certain the allegations against him or her-of charges based on allegedly overbroad or ambiguous timeframes in a charging document. See generally WIS. STAT. § 971.31 ; see also *512 Fawcett , 145 Wis.2d at 250-21, 426 N.W.2d 91 ; State v. Miller , 2002 WI App 197, ¶¶8-9, 257 Wis.2d 124, 650 N.W.2d 850.
¶36 By doing so, a defendant requires a circuit court to consider whether the charged timeframe is definitive enough to provide double jeopardy protections to the defendant. See Fawcett , 145 Wis.2d at 255, 426 N.W.2d 91. Here, Schultz did not do so. Even if he had, our review of the entire record makes it clear that the State's allegations against him extended no further than September 30, 2012, which can be considered "early fall." His subsequent prosecution for sexually assaulting Melanie on October 19, 2012, was outside this timeframe and did not violate his constitutional right to be free from double jeopardy.
By the Court. -Judgment and order affirmed.

Schultz was also convicted of perjury, pursuant to his guilty plea to that crime. However, Schultz does not appeal his perjury conviction, and neither it nor an acquitted charge against him for obstruction of justice is implicated by his double jeopardy challenge. Accordingly, we will not discuss those charges further.
All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Pursuant to the policy underlying Wis. Stat. Rule 809.86, we refer to the victim using a pseudonym.

Referring to Wis. Stat. § 972.11(2).

Schultz also raises an argument that October 19 unambiguously occurs in the early fall. He reasons that fall is a ninety-one-day season and October 19, as the twenty-seventh day of fall, is in the first third of the season. Accordingly, he argues that concluding October 19 is not in early fall would be "to deny the very movement of the celestial bodies; to deny that the Earth orbits the Sun." Nevertheless, we reject Schultz's hypertechnical and arbitrary definition of early fall. Schultz fails to explain why we should consider the first third-and not, say, the first fourth of the fall season, of which October 19 falls outside-to be "early fall." Moreover, in common vernacular, when "fall" begins varies based on one's perception. For example, many people consider "fall" to begin after the Labor Day holiday in early September. We conclude the phrase "early fall" is ambiguous and not susceptible to Schultz's categorical, solar-calendar argument.

In Wisconsin, jeopardy attaches "[i]n a jury trial when the selection of the jury has been completed and the jury sworn." Wis. Stat. § 972.07(2).

Although not at issue in this appeal, we note that a defendant facing an ambiguous charged timeframe has an existing remedy under Wisconsin law. See infra , ¶¶35-36.