**UNITED STATES of America**

v.

**John MONTICELLO, Appellant.**

**No. 12708.**

United States Court of Appeals Third Circuit.

Argued Jan. 6, 1959.

Decided March 4, 1959.

---

George R. Somer, Newark, N. J., for appellant.

John D. Wooley, Asst. U. S. Atty., Manasquan, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., John D. Wooley, Asst. U. S. Atty., Manasquan, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This is an appeal from conviction on five counts of an indictment brought against appellant, John Monticello, in the United States District Court for the District of New Jersey.[1] The first count charged defendant with being a party to a conspiracy to violate the Internal Revenue laws in regard to alcohol. The remaining four counts were substantive in nature: the second count charged appellant and others with carrying on the business of a distiller without having given bond; the third count charged them with possession of an unregistered still; the fourth count charged them with making and fermenting mash; and by the fifth count they were charged with the possession of distilled spirits and property intended to be used in violation of the Internal Revenue laws. The appellant stood trial in conjunction with co-defendants Dominick Zicaro and James Giuliano, and it is from a judgment of conviction that he appeals.

The evidence adduced by the government to sustain the charges may be summarized as follows: On March 28, 1958, agents of the Alcohol and Tobacco Tax Unit of the Internal Revenue Service executed a search warrant on the premises known as the Laurel Hill Farm in Millstone Township, Monmouth County, New Jersey. The search warrant was obtained after agents had smelled fermenting mash on the farm on March 13 and 14, 1958. Found in the barn in close proximity to the farmhouse were a large alcohol still, a boiler, and all equipment necessary for the distillation of alcohol. Approximately 9,400 gallons of fermenting mash were also discovered in four large wooden vats in the same barn, as well as large quantities of sugar, yeast, and five-gallon cans. The chemist who analyzed the samples seized by the agents testified that they contained varying amounts of alcohol. In addition the Supervisor of the Permit Unit of the Alcohol and Tobacco Tax Unit stated that no registration of the still in question had been filed and that none of the persons indicted had ever filed a notice of intention to engage in the business of a distiller or had filed the required bond.

---

1. This is a companion case to United States v. Giuliano, 3 Cir., 1959, 263 F.2d 582. A number of the parties indicted pleaded guilty, but John Monticello, James Giuliano and Dominick Zicaro pleaded not guilty. They stood trial together, and the former two were found guilty of all charges. Their appeals were argued on the same day, but the facts are sufficiently distinct to warrant separate written opinions.

A number of witnesses testified to the frequent association of appellant with co-defendants in the instant action. Additionally, evidence was presented to the effect that the appellant was a visitor to the farm on at least two occasions close to the time when the farm was raided. Summer, who lived on a farm adjacent to the Laurel Hill Farm, testified that in December of 1957 he observed appellant stuck in the snow in the driveway leading to the farm and that he pushed appellant's car into the garage with a tractor. Appellant then requested that he plow the snow out of the driveway and agreed to pay him ten dollars for doing so. Summer complied with the request and was invited into the farmhouse by appellant for a cup of coffee. He further testified that on the Sunday preceding the raid appellant, in the company of another, came to his farm and requested that he again plow the driveway leading to Laurel Hill Farm. On that occasion he was not paid by the appellant. However, on cross-examination, the attorney for the appellant elicited the fact from Summer that one of the co-defendants told him, when he objected that ten dollars was insufficient payment and that he desired ten dollars more, that "he would get it from Jerry [the appellant] and bring it down to me."

Laurel Hill Farm had been rented from a man named Sabin by Dominick Zicaro, who used the alias Gerald Anton. The account at the Suburban Propane Gas Corporation, which supplied gas to the farm, was kept in Anton's name on and after November 1957. On March 27, 1958, appellant appeared at the offices of the gas corporation and indicated that he desired to pay the balance due on that account. After having been told the amount of the bill, appellant indicated he was short of cash and left to get a sufficient amount. He was observed to approach a car parked outside the office and shortly thereafter returned and paid the bill.

On March 26, 1958, appellant was observed in the neighborhood of 90 Lock Street, Newark, as were his co-defendants Giuliano and Di Orio. At about 4:00 p. m. Giuliano was seen to put what appeared to be a red pipe-threader into the trunk of appellant's car. The same tool or one similar thereto was found in another car seized at the still on the day of the raid.

Although appellant concedes the existence of a conspiracy to run an illicit distillery at the Laurel Hill Farm, he submits that there is insufficient proof to support his connection therewith as a partner to the corrupt agreement. Specifically, he asserts that mere association with other defendants is not sufficient proof that he was a co-conspirator or that he had knowledge of the conspiracy. He cites a number of cases sustaining the proposition that one cannot be held as a conspirator unless and until there is proof that he entered into the unlawful agreement or combination or associated himself with the illegal enterprise. Among these cases are United States v. Falcone, 1940, 311 U.S. 205, 61 S.Ct. 204, 85 L.Ed. 128; Dennert v. United States, 6 Cir., 1945, 147 F.2d 286; and United States v. Gerke, 3 Cir., 125 F.2d 243, certiorari denied, 1942, 316 U.S. 667, 62 S.Ct. 1033, 86 L.Ed. 1742. The present posture of the law in this regard was stated in Direct Sales Co. v. United States, 1943, 319 U.S. 703, 709, 63 S.Ct. 1265, 1268, 87 L.Ed. 1674, where the Falcone case was held to stand for the principle "that one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally."

The instant case, however, does not fall within the ambit of the above-stated proposition. Admittedly the government's case is based on circumstantial evidence but, as we held in United States v. Migliorino, 3 Cir., 1956, 238 F.2d 7, and United States v. Georga, 3 Cir., 1954, 210 F.2d 45, a conspiracy charge may be sustained on such evidence. Nor need the evidence be inconsistent with every conclusion save that

of guilt, provided it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt. Holland v. United States, 1954, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Allard, 3 Cir., 240 F.2d 840, certiorari denied sub nom. Fishman v. United States, 1957, 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761.

The government's case did show association by the appellant with other defendants. However, there was in addition a great deal more. From the facts of record concerning appellant's employment of Summer for snow removal work on the lane leading to the still site on two occasions and his payment of the gas bill for the farm, which was contracted for in a fictitious name, the jury would be justified in inferring that appellant exercised a proprietary interest over the operation of the farm. It is pertinent to note that prior to the occasion of the second snow removal operation agents of the Alcohol and Tobacco Tax Unit had smelled strong odors of fermenting mash in the vicinity of the barn. In addition, Summer testified that when he requested additional pay for clearing the snow on the second occasion, one of the defendants told him he would obtain it from the appellant and deliver it to him. Thus appellant's proprietary interest in the operation was recognized by one of his co-defendants and testified to by one of his neighbors. This possible inference is reinforced by appellant's invitation to Summer to partake of a cup of coffee in the farmhouse. Such evidence of dominion over the still site indicates a much closer association with the conspiracy than existed in the cases cited by appellant. United States v. Pandolfi, 2 Cir., 110 F.2d 736, certiorari denied, 1940, 310 U.S. 651, 60 S.Ct. 1103, 84 L.Ed. 1416.

Appellant also asserts that evidence to support the substantive charges is lacking. Reliance is placed on Bozza v. United States, 1947, 330 U.S. 160, 67 S.Ct. 91, 645, 647 L.Ed. 818, which held that since the Internal Revenue statutes have broken down the steps in the operation of an illicit distillery business and made each step a separate offense, testimony to prove each separate offense "must point directly to conduct within the narrow margins which the statute alone defines." The opinion went on to hold that "One who neither engages in the conduct specifically prohibited, *nor aids and abets it*, does not violate the section which prohibits it." (Emphasis supplied.) 330 U.S. at page 163, 67 S.Ct. at page 647. It is the very exception emphasized in the preceding quotation that the government relies on to sustain these substantive convictions. It is not necessary that the government show the appellant personally committed the offense in question, for by virtue of 18 U.S.C. § 2,[2] an aider or abettor in the commission of crimes is to be treated as a principal. The jury might very well conclude from the evidence presented by the government that appellant aided or abetted in the commission of all the substantive counts.

The judgment will be affirmed.

---

2. "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a).