**UNITED STATES of America,**
**Appellee,**

v.

**PENNSYLVANIA REFUSE REMOVAL ASSOCIATION, Harry Coren, Arnold Graf, Salvatore Graziano, and Edwin S. Vile, Appellants.**

Nos. 15529–15533.

United States Court of Appeals
Third Circuit.

Argued Feb. 8, 1966.

Decided March 14, 1966.

Certiorari Denied May 31, 1966.

See 86 S.Ct. 1588.

J. Francis Hayden, New York City (Leonard M. Sagot, John J. Poserina, Jr., Ettinger, Poserina, Silverman & Sagot, Philadelphia, Pa., Stickles, Hayden, Kennedy, Hort & Van Steenburgh, New York City, on the brief), for appellants.

Gerald Kadish, Trial Atty., Antitrust Div., U. S. Dept. of Justice, Washington, D. C. (Donald F. Turner, Asst. Atty. Gen., Lionel Kestenbaum, Atty., Dept. of Justice, Washington, D. C., Donald G. Balthis, Chief, Raymond D. Cauley, Jr., Atty., Dept. of Justice, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Appellants-defendants were found guilty of violating Section 1 of the Sherman Antitrust Act.[1]

Defendant Pennsylvania Refuse Removal Association is a non profit corporation comprised of persons and firms engaged in the refuse removal business in the Philadelphia area which includes the counties of Philadelphia, Bucks, Delaware and Montgomery. It is the result of a merger of the original Delaware Valley Refuse Removal Association which had been formed in 1960 and a similar South Philadelphia group. Its principal office is in Philadelphia. The individual defendants, Graziano, Graf and Vile, were officers or directors or both practically from the beginning and throughout the indictment period except Graf whose official position as Secretary-Treasurer ended in January 1963. Coren became President and a Director in 1962 when his South Philadelphia group joined with the Delaware Valley Association to form the present corporation. Graziano is Vice-President.

The indictment charged the defendants with engaging in a conspiracy in restraint of trade in refuse removal in violation of Section 1 of the Sherman Act. Refuse removal was defined as "the collection, removal, hauling and disposal of refuse;". Remover is defined as "any person or company engaged in waste removal;".

It was alleged in the indictment that the named removers and all those removers who were members of the Association during all or part of the critical period or of other co-conspirator companies or trade associations and other persons not made defendants, participated as coconspirators in the charged offense and performed acts and made statements in furtherance of said offense.

At the trial there was substantial evidence that the Association through its members, including the individual defendants, agreed to fix prices, allocate customers, rig bids and coerce other refuse removers to join the conspiracy. There is evidence that the Association through its members agreed to raise prices by 25 to 50 per cent. In connection with this there is evidence of further agreement of the Association by its members to coerce non members who were able to take business away from the Association group because of the latter's price rise. Proof was introduced that there was an agreement that the Association members were not to compete with each other and not to interfere with other members accounts. Sanctions were

1. The Sherman Act, 15 U.S.C., § 1 reads: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *, Every person who shall make any contract or engage in any combination or conspiracy declared by sections 1–7 of this title to be illegal shall be deemed guilty of a misdemeanor * * *."

imposed on any member for so doing. Competition was eliminated between members on bidding for work.

At the oral argument it was conceded on behalf of appellants that the Government had presented sufficient trial evidence to support the convictions of appellants if the essential jurisdictional element of interstate commerce was present. The brief on behalf of appellants states:

"For the purpose of this appeal, it has been assumed that the Government's evidence was sufficient to justify a finding by the jury that the defendants engaged in practices amounting to efforts to allocate customers and to refrain from competing for particular customers, and to maintain prices for refuse removal. Thus a verdict establishing violation of the Sherman Act would have been justified, provided that the essential jurisdictional element of interstate commerce was present."

Whether appellants' activities were in restraint of interstate commerce and whether the judge inadvertently withdrew that question from the jury in his charge are admittedly the sole issues before us.

Appellants' main effort is concentrated on their attempt to split up their refuse business into two parts. They assert the claim that they were merely engaged in local operations of collecting or removing refuse in the Philadelphia area. It was clearly established by testimony that refuse is disposed of as soon as a truck is loaded and in no event later than twenty-four hours after collection. A major undisputed reason for this is that the truck must be emptied before it is ready for another load. It is also uncontradicted that the hauling away from the customers' premises of the trash and the proper disposal of it is an important part of the one charge for the service.

■ The Government presented thorough proof that during the critical period at least fourteen members of the Association disposed of all or part of their collected refuse by trucking it over to New Jersey and dumping it in that state. In connection with this the statement of the case in appellants' brief contains the following:

"Another alternative was to cross over the bridge to New Jersey and dump at a private dump there. Fourteen removers dumped some or all of the refuse which they collected in Philadelphia at a private dump or landfill in New Jersey during the indictment period."

The totals of those operations were not constant but in 1962 alone (highest year) the charges for that service totaled approximately $299,860. Appellants contend that the refuse is valueless and therefore not the subject of interstate commerce. From the record we are satisfied that the factual holding of the trial judge that " * * * the hauling and disposal of the refuse was an integral part of the refuse removal business" is entirely correct. In that situation the refuse transported from Pennsylvania to New Jersey and disposed of in the latter state as a vital element of the one business operation was plainly a proper subject of interstate commerce. Hoke v. United States, 227 U.S. 308, 320, 33 S.Ct. 281, 57 L.Ed. 523 (1913). This is true despite appellants' claim that the refuse was their property. United States v. Hill, 248 U.S. 420, 39 S.Ct. 143, 63 L. Ed. 337 (1919). The contention of appellants that the refuse volume carried to New Jersey was relatively small does not in any way restrict the application of the Sherman Act. National Labor Relations Board v. Fainblatt, 306 U.S. 601, 606, 59 S.Ct. 668, 83 L.Ed. 1014 (1939).

■ The Government in this case relied upon the proposition that the complained of acts occurred within the "flow" of interstate commerce or "in commerce". The proofs fully supported that theory, the jury verdict and the judgment of the District Court. Las Vegas Merchant Plumbers Ass'n. v. United States, 210 F.2d 732, 739 n. 3 (9 Cir. 1954), cert. den. 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954). United States

v. Frankfort Distilleries, 324 U.S. 293, 296, 65 S.Ct. 661, 89 L.Ed. 951 (1945).

■ The contention regarding the supplemental charge arose from the defense objection to the court's use of the word "appreciable" as too vague in connection with the disposal of part of the trash in New Jersey. As to this the judge in his supplemental charge first told the jury that he recognized that "appreciable" is a very vague term, that he had used it as opposed to "a casual load or two taken over to New Jersey". Then he said, as the transcript has it, "All I mean to convey to you, members of the jury, is that there was a sufficient movement of such trash to New Jersey that it could not be characterized as something that was just casual or inadvertent." Obviously the word "if" between "that there" was unintentionally omitted by the judge or the stenographer. Just as obviously the word "if" was needed for the completion of the sentence.

The judge in his base charge, using the word "appreciably" had unmistakably left the decision as to the nature of the trash disposals in New Jersey to the jury. He had told the jury:

> "If you find from the evidence, beyond a reasonable doubt, that refuse removers, who collect refuse in the Philadelphia area, dispose of appreciable quantities of such refuse in New Jersey, then I instruct you that the interstate commerce element of the offense with which the defendants are charged has been established.
>
> "What I mean to exclude by that definition is the casual dumping of a lot of trash. Anything more than a casual dumping of a load or two of trash, anything that has any degree of consistency or regularity, or involves any appreciable quantity, would satisfy the requirement of interstate commerce."

In the context of the charge it is most doubtful that the supplemental charge sentence caused any confusion whatsoever to the jury. In any event it was completely cured by the court's immediately following and final directive to the jury as follows:

> "If you find that this was a part of a regular and consistent movement of trash from Pennsylvania to New Jersey, if you find that was part of the business of removing trash from Philadelphia area by these refuse collectors who operate in the Philadelphia area, then I say to you that the interstate commerce aspect of the crime has been established."

The court then asked counsel, "Anything further gentlemen?" and counsel for the defendants answered, "No, sir."

■ There was no objection to the now disputed sentence or any other part of the supplementary charge. There was no plain error involved. While the point is of course not rightly before us at all, we considered it advisable to dispose of the question on the merits so that there would be no possible doubt regarding it.

The judgment of the District Court will be affirmed.