Julian FOX and James Henry Stanford, Appellants,

v.

UNITED STATES of America, Respondent.

Nos. 20951, 20952.

United States Court of Appeals Ninth Circuit.

June 30, 1967.

Peter J. Hughes, Sheela, O'Laughlin & Hughes, San Diego, Cal., for appellants.

Edwin L. Miller, Jr., U. S. Atty., Mobley M. Milam, Phillip W. Johnson, Asst. U. S. Attys., San Diego, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and PECKHAM, District Judge.

PECKHAM, District Judge:

Following a trial before a jury the appellants Julian Fox and James Henry Stanford were convicted of conspiracy to smuggle marijuana, and of a substantive charge of smuggling marijuana from Mexico into the United States.

The District Court had jurisdiction under Title 18 U.S.C. §§ 2 and 3231, and 21 U.S.C. § 176a. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1294.

Count 1 of the indictment charged that appellants and coindictees Olivia Ann

Barnes, Allison Steward, Elmer A. D. Munns, and unindicted co-conspirator Shirley Jean Gainer and divers other persons to the Grand Jury unknown, agreed, confederated and conspired to commit the offenses of knowingly and with intent to defraud the United States, importing and smuggling marijuana from Mexico to the United States without presenting the marijuana for inspection and without declaring the marijuana as required by law, and concealing and facilitating the concealment and transportation of such marijuana which had been imported into the United States contrary to law. This Count alleged the following overt acts:

(1) On June 14, 1965, Olivia Barnes entered the United States in an automobile containing 42 pounds of marijuana; (2) on June 14, 1965, appellants watched automobile traffic in the vicinity of San Ysidro, and (3) on the same date appellants Stanford and Fox and co-indictees Barnes and Munns proceeded north on U. S. Highway 101.

Count 2 charged that on June 14, 1965, co-indictees Olivia Ann Barnes and Elmer A. D. Munns, with intent to defraud the United States, knowingly smuggled and clandestinely introduced into the United States from Mexico approximately 42 pounds of marijuana, which marijuana should have been invoiced, and knowingly imported and brought said marijuana into the United States from Mexico contrary to law, and that appellants Stanford and Fox and co-indictee Allison Steward knowlingly aided, abetted, counselled, induced, and procured the commission of that offense.

After pleas of not guilty had been entered, trial commenced as to appellants Stanford and Fox, together with co-indictees Barnes and Steward. At the close of the Government's case in chief, a motion for acquittal as to co-indictee Steward was made and granted as to him alone. Similar motions were made

on behalf of co-indictee Barnes and appellants Fox and Stanford and were denied. At the close of all the evidence, motions for acquittal as to both appellants were made and denied again. Ruling on the motion as to co-indictee Barnes was reserved. The appellants and co-indictee Barnes were found guilty. Each appellant was committed to the custody of the Attorney General for a period of seven years on each of the two counts, to run concurrently. Appellants thereafter filed timely notices of appeal. Barnes is not before us on appeal. Appellants specify that the District Court erred as follows: (1) the evidence is insufficient as a matter of law to sustain the conviction of either appellant. (2) Both appellants were prejudiced by the receipt in evidence of contraband seized illegally by a Customs Officer.

We shall undertake to set forth the essential facts from our study of the record.[1] At approximately 11:45 a. m. on June 13, 1965, Melvin L. Moore, a United States Customs Officer, observed a Ford automobile at the parking lot of Oscar's Drive-In restaurant at San Ysidro, California. Appellants Stanford and Fox were in the Ford, which was about 200 or 300 yards from the international border between the United States and Mexico. Moore kept the vehicle under surveillance for about two hours and forty-five minutes. The Ford was located in a position from which all traffic entering from Mexico could be seen. During most of the time that Moore observed appellants through binoculars, "they had their heads looking toward the border." At about 2:30 a. m. a 1960 Pontiac entered the United States from Mexico. As it approached the curb in front of Oscar's Drive-In, it slowed down, and the illumination of its brake lights was observed. As the Pontiac reached a point almost opposite the Ford at Oscar's, the brake lights went off, and the vehicle accelerated in a northerly

---

1. None of the exhibits was forwarded to this Court. The Clerk of this Court has determined that no request for transfer of exhibits was made to the District Court by either the appellants or appellee.

direction. Almost immediately the Ford was started and headed north on the same highway. Moore followed the two vehicles for about 17 or 18 miles or possibly more. During this time the Ford and the Pontiac passed each other a few times, and their speeds varied from 35 to 75 miles per hour. When one of the two vehicles would slow down, the other would do the same, and when one accelerated, the other would do the same. Without any action being taken by Moore, the Pontiac stopped while still in San Diego County. Moore stopped his vehicle, alighted, and identified himself to the Pontiac's occupants who were Olivia Barnes (the driver), Elmer Munns, and Shirley Jean Gainer. They stated that they had just entered from Mexico. After Moore asked whether they were bringing merchandise from Mexico, they said they had a few souvenirs. He asked permission to look in the trunk and was told that "they would not mind". At that time someone produced a key and opened the trunk. Moore discovered on the floor of the trunk certain packages and under the rear seat other packages. The contents of these packages later analyzed by a United States chemist as marijuana weighed 42 pounds, and the cost in Tijuana as of that date would have been $640.00. Agent Moore arrested the occupants of the Pontiac.

In the early morning hours of the same day appellants Fox and Stanford were arrested near Oceanside. They apparently had had a flat tire between the stopping of the Pontiac and their arrest in Oceanside.

Elmer Munns admitted as a witness at the trial that he had been promised $250.00 by someone, whom he would not identify and who he stated was not in the courtroom, for driving the car to Tijuana, leaving it for awhile in a certain parking lot near the racetrack, and driving it back over the border. After being approached, Munns contacted his girl friend, Olivia Barnes, and asked her if she wanted to go along, noting that they could also get married. Olivia Barnes also contacted a friend, Shirley Gainer, who accompanied them on the trip. Until crossing the border, Olivia Barnes drove because she was the only one who had a driver's license. After crossing the border, she got lost, and Munns drove and was utilizing a map that had been drawn to direct him to the place where the vehicle was to be parked. Munns parked the car, leaving the keys, and went with the girls to the racetrack where all remained for some time. Then all three went to a nearby place called the Country Club Motel. Olivia Barnes and Munns spent most of the time in a motel room, and Shirley Gainer remained in the lobby area. Appellant Stanford came to the Motel and spoke to Shirley Gainer. Munns referred to Stanford as "my partner" to the girls. Stanford talked to Shirley Gainer and then departed.

Appellants' testimony and the testimony of agents as to appellants' prior statements concerning the events of their trip to and from Mexico, are set forth separately, as their analysis becomes important to our decision upon the sufficiency of the evidence.

Testimony of appellant Stanford and of agents as to his prior statement: Appellant Stanford testified that he and appellant Fox had gone to Tijuana on June 13, 1965, that he went to the racetrack, that he left and made a telephone call that lasted for about 10 minutes, and that the telephone call involved his only separation from Fox. He testified that he talked to Shirley Gainer and Munns at a motel at about the time of the telephone call. He said that he talked to Shirley Gainer for about 15 or 20 minutes. He testified that he had not seen Shirley Gainer and others leaving the racetrack. Customs Agent Walter Gates testified that Stanford had previously stated that he saw two women and a man leaving the racetrack parking lot and stated that he followed them to the motel and engaged the girl in conversation. Moore also testified regarding this prior statement by Stanford.

Stanford also testified that he did not see appellant Fox at the motel. Agent

Gates testified that Stanford had stated that Fox had arrived at the motel and engaged in the conversation with the girl. Moore also testified concerning this statement by Stanford. Stanford testified that no such statement was made.

Stanford testified that he and Fox stopped at Oscar's Drive-In because the car was getting too hot, that he was not watching the traffic, that he stayed there for 2½ hours, that he was in a hurry to get back to Los Angeles County, that he did not look under the hood of the vehicle, that Fox looked under the hood only once (when they first arrived), and that he went into Oscar's Drive-In but did not bring any water out from the men's room. At that time Oscar's Drive-In had a men's room visible from the customer area inside the drive-in.

Moore testified that Stanford had told him that "they remained at Oscar's for quite a long time and that the reason they stayed there that long was Mr. Fox didn't want to leave but he would give no explanation to Mr. Stanford as to why he wouldn't leave".

Agent Gates testified that Stanford had told him that he and Fox had left Los Angeles at about 4 p. m. on June 13. Stanford denied the making of this statement.

Stanford's address at the time was 932 43rd Place. He lived with appellant Fox at that address. However, he gave a different address when questioned by Moore.

Testimony of appellant Fox and of agents as to his prior statement: Fox testified that he and Stanford had left Los Angeles at around 1:30 or 2 p. m., to the best of his recollection, in the Ford, which belonged to Fox. He testified that he went to a liquor store, then to a racetrack, then with Stanford to make a telephone call, then to a bar in downtown Tijuana, and directly to the border.

He testified that the car was hot and that there was carburetor trouble as well; they stopped at Oscar's; "the car

would not start"; but it started later. He also testified that he stayed at Oscar's for "quite some time", that he did nothing with the carburetor while stopped, and that the only time that he looked under the hood while at Oscar's was when he first arrived there, just after cutting the switch off. Moore testified that Fox had stated that they had stayed at Oscar's for 30 or 40 minutes. Gates testified that Fox had stated that they were only about 30 minutes at Oscar's. Fox denied having made these statements. Fox testified that they arrived at the border between 11 and 11:30, approximately. Moore saw them leave Oscar's at about 2:30 a. m.

Both Stanford and Fox denied seeing the Pontiac.

■ Appellants' first contention that the evidence is insufficient as a matter of law to support a conviction of each on each count must be considered in light of the well established rule that the evidence must be viewed in the most favorable light to sustain the judgments of conviction below. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Diaz-Rosendo v. United States, 357 F.2d 124 (9 Cir. 1966). While conceding that a conspiracy or aiding and abetting may be proved by circumstantial evidence alone, appellants argue that their guilt is predicated simply on association, meeting together, on other casual and even unexplained contacts between the co-conspirators. We cannot agree.

The existence of a conspiracy was clearly shown by the testimony of Munns who stated that someone had offered him $250.00 to drive the vehicle across the border, leave it with its keys at a designated place, and return the vehicle to the United States. It is true that Munns refused to name the person who offered him $250.00 to take the trip because he said he did not want to jeopardize his family; that he never saw Stanford before he asked him if he could talk to Shirley Gainer; that he had never seen Fox before he was arrested; and that the person who offered

Munns money to make the trip was not present in the courtroom. However, Munns was seriously impeached. Both Gates and Moore, Customs Agents, testified that Munns said he recognized the man who visited him at the motel in Tijuana having seen him previously in Los Angeles. In addition, Moore testified that Munns had stated that he was afraid of Fox and had requested that he be removed from the cell in which Fox was held. Munns admitted at the trial he told Moore that he was afraid but denied making the statement that he feared Fox. However, Munns did admit at the trial he made a request that he be removed from the cell in which Fox was detained.

■ As a result of this impeachment, the jury could have disbelieved Munns when he denied further knowledge of Fox and Stanford, and yet have accepted his testimony of the existence of a conspiracy. Once the existence of the conspiracy is shown, slight evidence is all that is needed to connect a *defendant with it.* Diaz-Rosendo v. United States, ante; Sabari v. United States, 333 F.2d 1019 (9th Cir. 1964). We find such evidence needed to connect appellants in this record. The behavior of appellants looking toward the border for two hours and forty-five minutes from Oscar's parking lot, the immediate starting of what was said to be the disabled Ford after the Pontiac laden with contraband briefly slowed down opposite the Ford, the close involvement of the Ford and Pontiac in passing and following each other and speeding and slowing down in tandem, the earlier contact occurring at the Tijuana motel where Stanford talks with Munns and Gainer and when Stanford is depicted to the girls by Munns as "my partner", —these circumstances are sufficient from which a jury could find guilt when considered with the explanation of the appellants. We previously outlined this testimony of each appellant and of his earlier statements to the agents. These significant contradictions and discrepancies were such that the jurors could

conclude that the explanations of the presence of each at Oscar's Drive-In, of his being in Tijuana, and of the purpose of the contact with Munns and Gainer at the Country Club Motel were substantially false. If an appellant was fabricating an explanation of any of these acts and events, the jury could take such statements into consideration in weighing the question of his guilt and his guilty knowledge.

■ This Court in Holt v. United States, 272 F.2d 272 (9th Cir. 1959) approves the settled rule stated in Wilson v. United States, 162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090: "Nor can there be any question that, if the jury were satisfied from the evidence that false statements in the case were made by defendant, or on his behalf, at his instigation, they had the right, not only to take such statements into consideration, in connection with all the other circumstances of the case, in determining whether or not defendant's conduct had been satisfactorily explained by him upon the *theory of his innocence, but also to re-*gard false statements in explanation or defense, made or procured to be made as in themselves tending to show guilt."

Appellants contrast the evidence found in four other cases decided by this Circuit with the record of the instant case and conclude that we must reverse. These cases have been carefully examined and do not conflict with our conclusions here. We believe from all the circumstances presented by the evidence here the jury could reasonably find the appellants each guilty of each count.

In this respect we find that there is no significant difference between the facts of other narcotics or marijuana smuggling cases in which the appellate courts have held that there was sufficient evidence to sustain the convictions. Eason v. United States, 281 F.2d 818, 87 A.L.R.2d 842 (9th Cir. 1960); Sandez v. United States, 239 F.2d 239 (9th Cir. 1956); Meyers v. United States, 310 F.2d 801 (5th Cir. 1962).

The second contention of appellants concerns the admission into evidence of the marijuana alleged to have been illegally seized by the Customs Officer from the Pontiac. Appellants were not anywhere in the presence of the vehicle at the time that the marijuana was seized and claimed no interest in that vehicle nor in the marijuana. For the reasons stated in Diaz-Rosendo v. United States, ante, the appellants did not have any standing to object, and the District Court did not err in receiving the contraband in evidence.

The judgment of conviction is affirmed.