**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**James E. BUCKLEY, Robert D. Walker,**
**Hugh Norwood, Jr., and Wesley K.**
**Green, Defendants-Appellants.**

**Nos. 15870–15873.**

United States Court of Appeals
Seventh Circuit.

June 13, 1967.

Rehearings Denied in Nos. 15870, 1, 2
July 20, 1967.

Delars J. Bracy and Stephen Levy, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., Gerald M. Werksman, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Attys., of counsel, for appellee.

Before HASTINGS, Chief Judge, KNOCH, Circuit Judge, and MAJOR, Senior Circuit Judge.

KNOCH, Circuit Judge.

The defendants-appellants, James E. Buckley, Robert D. Walker, and Hugh Norwood, Jr. were convicted after trial by jury of the theft of television sets moving in interstate commerce in violation of Title 18, U.S.Code § 659. The defendant-appellant, Wesley K. Green, was convicted of possession of stolen chattels taken from interstate commerce in violation of the same statute.

The Trial Judge imposed sentences of one year on each of the first three defendants above listed and three years on Mr. Green.

All four defendants contend that they were entrapped into taking and possessing the chattels in question and that, consequently, the items cannot be said to have been stolen.

At the trial, Federal Bureau of Investigation Special Agent, Russell R. Girsch, testified that on a visit to the defendants' employer, Associated Truck Lines, Inc., on December 7 or December 8, 1965, he conferred with Terminal Manager, Steven Generis, who advised him that Associated Truck had suffered a number of thefts and that the four defendants (among others) were viewed as suspects. Agent Girsch testified that he arranged to conduct a surveillance.

Milton Smazik, Associated Truck's safety and personnel supervisor, testified that on December 9, 1965, about noon, he saw three cartons of television sets, four cartons of Ampex recorders and a carton of spark plugs in a trailer which was parked in the fifth row from the west side, among the six rows of trailers parked in the yard of Associated Truck's premises. The record does not disclose who placed these items in that trailer.

Another F.B.I. Agent, James A. Roberts, testified that with Agent Girsch and Mr. Smazik, he conducted surveillance on December 9, 1965, from a truck parked in Associated Truck's parking lot, beginning at about 9:30 p. m.

George Reinhofer, who was employed by Associated Truck as a spotter and dock hand, testified that he telephoned defendant James Buckley about 7 or 8 p. m., on December 9, 1965, and told him "that there was some freight on a trailer," although he did not at that time know the character of the "freight." He stated that Mr. Buckley answered that he would look at it and take care of it.

None of the four defendants had duties which required him to handle or move freight.

Agent Roberts testified that about 10:20 p. m. he saw defendants Buckley and Walker engaged in a conversation, after which defendant Buckley moved a Pontiac automobile, then drove away in a panel truck and returned shortly. Agent Roberts then saw defendants Walker and Buckley transfer a carton from the panel truck to the Pontiac, which defendant Buckley then moved away. He saw defendant Buckley bring another automobile (license number 945–500) to the same location where the two defendants transferred to the automobile a carton brought by a yellow truck, after which the second automobile was moved to another spot, where the two defendants proceeded to change its oil. Agent Roberts then observed defendant Norwood drive up in a red truck from which two cartons were transferred to a Pontiac convertible. Still later he saw

defendant Norwood drive up in a 1966 Mercury automobile license number 5D 5647 [1], into which defendant Norwood placed two cartons and then moved the automobile away. Some time later he saw defendant Norwood drive up a fifth automobile and put two more cartons into it from the truck.

Mr. Reinhofer testified that when he arrived for work that night about 11 p. m. he met Mr. Buckley with whom he had a conversation; that Mr. Buckley told him what was in the parked trailer and said that "he already had one."

About midnight, Mr. Reinhofer had another conversation with Mr. Buckley and Mr. Norwood during which Mr. Buckley repeated that he had a television set in his car and asked Mr. Reinhofer what he wanted. Hugh Norwood asked Mr. Reinhofer for the keys to Mr. Reinhofer's automobile, which were given to him. Later Mr. Reinhofer heard Mr. Norwood ask Wesley Green if he wanted anything from the trailer and Mr. Green had said "yes." About 2:30 or 3:00 a. m., Mr. Norwood had returned Mr. Reinhofer's keys.

Meanwhile, about 12:30 a. m. Hugh Norwood had asked Mr. Reinhofer to move the trailer to a more convenient spot because he "didn't want anybody to see him" and Mr. Reinhofer had done so. Mr. Reinhofer testified that this was the only time he personally visited the trailer.

Each of the defendants was arrested after he had left the premises of Associated Truck and was driving home. The stolen items were found in the trunks of the various automobiles driven by the defendants.

Special Agent Swiercz testified that when Mr. Green's automobile trunk was opened, Mr. Green volunteered the statement that he had purchased the two cartons from someone at the terminal knowing they were stolen, and later he said that he agreed to buy a stolen radio and spark plugs from Mr. Norwood, turning his car keys over to the latter so that these items could be placed in his automobile; that about 2:30 a. m. defendant Norwood had returned his keys with the statement that a radio and spark plugs were in the Green car trunk.

The four defendants testified to a series of approaches allegedly made to them individually by George Reinhofer in which he repeatedly urged them, despite their firm refusals to participate in thefts from Associated Truck, particularly urging three of them to take away the very items involved in this case because if they did not get rid of these items, another dock employee would be in trouble.

In his rebuttal testimony, George Reinhofer himself specifically denied any such approaches, asserting that the conversations had been limited to the telephone call and the other conversations that same night at the terminal as outlined by him in his earlier testimony.

The jury was thus faced with a clear conflict in testimony, resolution of which turned on the issue of credibility, a matter for decision by the jury. Evidently the jury accepted as true the testimony of Mr. Reinhofer and rejected the testimony of the four defendants. Masciale v. United States, 1958, 356 U. S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859.

It is axiomatic that this Court must view the evidence and the inferences reasonably to be drawn from it in the light most favorable to the appellee. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680. So viewed, the evidence clearly indicates a situation in which the defendants were merely afforded an opportunity for wrongdoing which they seized of their own free will. United States v. Carter, 7 Cir., 1963, 326 F.2d 351, 353; United States v. Stocker, 7 Cir., 1960, 273 F.2d 754, 756, cert. den. 362 U.S. 963, 80 S. Ct. 879, 4 L.Ed.2d 878.

The record before us does not support a conclusion that otherwise innocent persons were induced to violate the law by

[1]. That was defendant Green's automobile.

trickery, persuasion or fraud of any agents either of the government, or of their own employer. United States v. Millpax, Inc., 7 Cir., 1963, 313 F.2d 152, 156–157, cert. den. 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 198, rehrg. den. 373 U.S. 954, 83 S.Ct. 1677, 10 L.Ed.2d 708; Sorrells v. United States, 1932, 287 U.S. 435, 451, 53 S.Ct. 210, 77 L.Ed. 413; United States v. Georgiou, 7 Cir., 1964, 333 F.2d 440, 441–442, cert. den. 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176.

After defendant Green had been found guilty as charged in the indictment (which charged him with unlawful possession) the written Order of Judgment and Commitment incorrectly stated that he was convicted of "embezzling, stealing, taking and carrying away" chattels etc. as well as of "having in his possession stolen goods" etc.

Defendant Green contends that in sentencing him, the Court gave consideration to an additional crime of which he had not been convicted. He also contends that he was penalized for electing to be tried by jury.

The government argues that the reference to theft in the written judgment is clearly a clerical error and that the Trial Judge could not have been misled. We do not believe that we can make that assumption on the state of the present record, although we would be inclined to agree that clerical error is a likely explanation.

We do believe, as the government does, that the phrase "we went through a jury trial here" which has been lifted out of its context by defendant Green does not reflect any reproach to the defendants by the Trial Judge for having chosen to be tried by jury, but, on the contrary, refers to the Judge's opportunities for observing the defendants and his remarks on a lack of evidence of remorse or contrition at the time of the hearing.

Because of the discrepancy in the written Judgment, the Judgment and sentence as to defendant Green only is hereby vacated and this cause is remand-ed to the District Court solely for the purpose of resentence of defendant Green. In all other respects, the judgment of the District Court is affirmed.

Affirmed in part. Judgment in part vacated and cause remanded solely for resentence of defendant Green.