**UNITED STATES of America**

v.

**John Richard PRATT, Donald C. Wilson a/k/a "Snooks"**

**John Richard Pratt, Appellant.**

**No. 17672.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 16, 1969.

Decided June 30, 1970.

Rehearing Denied Sept. 1, 1970.

Peter J. King, Patterson, Crawford, Arensberg & Dunn, Pittsburgh, Pa., for appellant.

John H. Bingler, Jr., Asst. U. S. Atty. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, KALODNER and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The defendant-appellant Pratt with one Wilson was indicted on a two-count joint indictment charging him and Wilson both as principals, respectively, with selling heroin not in the original stamped package and also selling heroin without the prescribed written order form in violation of Sections 4704(a) and 4705 (a), Title 26, U.S.C., contrary to Section 7237 of Title 26, U.S.C. Wilson pleaded guilty but did not testify at Pratt's trial. Pratt testified and denied his guilt. The court charged the jury as to aiding and abetting the commission of a crime, Section 2, Title 18, U.S.C. Pratt was found guilty on both counts.

The question which we must determine is whether there is sufficient evidence in the record to support Pratt's conviction.[1] It is the law that on a motion for judgment of acquittal the view of the evidence most favorable to the Government must be taken. See United States v. Pennsylvania Refuse Removal Ass'n, 242 F.Supp. 794, 798 (E.D.Pa. 1965), aff'd., 357 F.2d 806 (3 Cir.), cert. den., 384 U.S. 961, 86 S.Ct. 1588, 16 L.Ed.2d 674 (1966). Cf. United States v. Gordon, 410 F.2d 1121 (5 Cir. 1969).

As was said in Turner v. United States, 396 U.S. 398, 407, 90 S.Ct. 642, 647, 24 L.Ed.2d 610 (1970), "[T]he question on review is the sufficiency of the evidence. * * *" A scrutiny of the evidence shows the following. Agent

[1]. Motions for judgment of acquittal, Rule 29(a), Fed.R.Crim.Proc., 18 U.S.C., were made and were denied. A new trial was denied by Judge Miller following a written opinion, not reported for publication.

Moore of the Federal Bureau of Narcotics made an engagement to meet a man named "Snooks" to buy heroin. Policeman Rouse of the Pittsburgh Police Force, collaborating with Moore followed Moore to his rendezvous with "Snooks" on the "North Side" of Pittsburgh. "Snooks" was in fact Pratt's codefendant Wilson. Wilson informed Moore that he would have to go to the Hill District of Pittsburgh to get heroin. The two men drove in Moore's car to the Hill District, followed by Policeman Rouse in another car. Moore parked in the "300 block of Roberts Street". At this time Wilson asked Moore as to how many bags of heroin he wanted. Moore said that he had $20, "enough for two $8.00 bags". Wilson said, "Give me the $20.00 and I will get three bags of heroin." Wilson took the $20 and walked down Roberts Street to Center Avenue and out of Moore's sight. Moore stated: "In the meantime, Officer Rouse drove up, parked across the street, got out of his car and also walked down Roberts Street on Center Avenue and [also] out of my sight."

Officer Rouse corroborated much of Moore's testimony. He testified that he followed Moore to the North Side of Pittsburgh where he saw Moore pick up Wilson and followed Moore and Wilson to the Hill District where he saw the latter leave the car and meet Pratt. He also stated that Pratt and Wilson talked together for about five minutes; that Pratt then crossed to his, Rouse's, side of the street, walked past Moore's car, turned around and looked "in" the windshield; that Pratt next turned around and walked back to Wilson and again had a short conversation with Wilson and that then Pratt and Wilson got into Moore's car, Wilson sitting on the front seat with Moore and Pratt on the back seat alone. Rouse stated that he was probably not more than thirty or thirty-five feet away from Wilson and Pratt at the critical times mentioned. Rouse also testified that he later followed the three men in Moore's car to Webster Avenue

where Pratt left the car. This ended Rouse's pertinent connections with the episode.

Both Moore and Rouse testified that they did not see any package or any other object pass from Pratt to Wilson or from any passerby to Wilson. Moore testified, however, that when Pratt and Wilson got into his car after their meetings and conversations Wilson handed Moore two glassine bags containing heroin, and when Moore asked where the third bag of heroin was, he said, in Pratt's presence, that he and Pratt were going to "shoot it up" and that Pratt had "put" $4 toward the purchase of the third bag of heroin. Moore then told Wilson that he didn't like the way he did business and that he wanted the third bag of heroin. Moore testified that Wilson said emphatically that he was keeping the third bag and that he and Pratt were going "to shoot up the narcotics".

■ It appears that the court below had a number of possibilities to consider in determining whether a motion for judgment of acquittal should be granted. It is possible that Wilson lied when he said that he had to go to the Hill District to get narcotics and that he may have had them in his possession all the time. It is possible and the United States contends that it is probable that Pratt gave the two glassine packages of heroin to Wilson during the course of one of their conversations on the street. But there is no proof of this, if indeed, it be a fact. It would appear as if Pratt in his inspection of Moore in Moore's car, when he peered at Moore "in" or through the windshield, possibly was sizing up a prospective customer. The statement made by Wilson to Moore that he and Pratt were going to "shoot up" the third bag of heroin and that Pratt had "put" $4 toward its cost, indicates that there was perhaps a third bag of heroin some place or even in their possession which the two men intended to consume. But it is not contended by the prosecution that the third bag of

heroin was sold to Moore.[2] Proof must be made by evidence. There is no proof whatsoever that Pratt ever had the two bags of heroin in his possession or that he sold or gave them to Moore in violation of the statutory charges.[3]

■ As to aiding and abetting the sale of the two bags of heroin the utmost that can be mustered by way of proof favorable to the prosecution is (a) that Pratt had conversations on a street in the Hill District with Wilson, (b) that Pratt looked "in" or through the windshield at Moore, and (c) that he was sitting on the back seat of Moore's car when Wilson sold Moore the bags of heroin while sitting on the front seat.[4] Pratt is clothed, of course, with a presumption of innocence and to hold that the foregoing evidence is sufficient to prove that he aided and abetted Wilson in the sale of the two bags of heroin is to deprive Pratt of his liberty without due process of law; to find him guilty by association.[5]

We have found no case on all fours with the circumstances of the case at bar but the decisions of two strong courts indicate the course which we should follow here. See Orozco-Vasquez v. United States, 344 F.2d 827, 829 (9 Cir. 1965), where the Court of Appeals for the Ninth Circuit held the proof was insufficient to establish possession of narcotics of the defendant Molano, and United States v. Duff, 332 F.2d 702, 708 (6 Cir. 1964), where the Court of Appeals for the Sixth Circuit took the position that the defendant Williams "was a passive spectator to the sale [of narcotics] but took no part in it", and set aside Williams' conviction on the third count of the indictment.

■ The fact that Wilson and Pratt were jointly indicted does not aid the prosecution here. A joint indictment does not create evidence.

In view of our determinations it is unnecessary to decide any other issues raised by Pratt.

The judgment of conviction will be reversed and the cause will be remanded with the direction to enter a judgment of acquittal.

We thank Pratt's court-appointed counsel for the able defense of his client.

KALODNER, Circuit Judge (dissenting).

In the instant case the unchallenged evidence established a sale and delivery of heroin in violation of the federal narcotics laws by Pratt's co-defendant, Wilson, in Pratt's presence. Wilson and Pratt were jointly charged with having made the unlawful sale in a two-count

---

2. We note that very little is known about the third bag of heroin and there is no proof whatsoever that it fell within the proscription of Sections 4704(a) and 4705 (a) or Section 7237 of Title 26, U.S.C.

3. Emphasis is placed in this opinion upon the fact that there is no proof Pratt ever had in his *possession* the two glassine bags of heroin because it is the prosecution's fundamental theory that Pratt, being *possessed* of the two glassine bags of heroin, delivered them to Wilson who in turn *sold* them to Moore. The sections of Title 26, U.S.C., cited in the first paragraph of this opinion, of course, proscribe the sale of heroin and not its possession.

4. The prosecution states in its brief that Pratt pleaded guilty to a Federal narcotics offense in 1965 and was given a two years suspended sentence and placed on three years probation, the period of probation being still in effect at the time of the offenses with which he is charged. We point out that when on cross-examination the prosecution attempted to question Pratt to show that his conviction in 1965 was specifically for selling narcotics, defense counsel objected and the court sustained the objection. There is no proof in this record that Pratt was or ever had been a narcotics vendor.

5. In his dissenting opinion in Turner v. United States, 396 U.S. 398, 427, 90 S.Ct. 642, 658, 24 L.Ed.2d 610 (1970), Mr. Justice Black stated: "Unfortunately, grave evils such as the narcotics traffic can too easily cause threats to our basic liberties by making attractive the adoption of constitutionally forbidden shortcuts that might suppress and blot out more quickly the unpopular and dangerous conduct." The truth of this statement seems undeniable.

indictment. Wilson pleaded guilty and was sentenced to a 5-year prison term.

Pratt elected to stand trial.

The jury found that the totality of the circumstantial evidence established beyond a reasonable doubt that Pratt was involved in the unlawful sale of heroin by Wilson to federal narcotics agent Moore and returned a guilty verdict against him.

The majority now sets aside the jury's verdict and directs Pratt's acquittal because it finds that the evidence only established the "possibility" of Pratt's involvement in the unlawful sale of heroin.

In so deciding, the majority has usurped the jury function in contravention of these well-settled principles: "If the jury is convinced beyond a reasonable doubt" a reviewing court "can require no more;"[1] appellate courts cannot "weigh the evidence" and "the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government to support it;"[2] and it is not necessary, in appraising the sufficiency of evidence, that an appellate court "be convinced beyond a reasonable doubt of the guilt of a defendant."[3]

It is settled that there is no distinction between direct or testimonial evidence and circumstantial evidence. In Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 731 (1954), it was specifically held at page 140, 75 S.Ct. at page 137: *"Circumstantial evidence * * * is intrinsically no different from testimonial evidence."* [4] (emphasis supplied)

This Court has specifically rejected the contention that only direct evidence can establish violation of the federal narcotics laws, and held that such violation may be proved by circumstantial evidence alone.[5]

We have time and again ruled that in testing whether circumstantial evidence supports a conviction "the question is whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let a jury find him guilty beyond a reasonable doubt," and that "the evidence does not need to be inconsistent with every conclusion save that of guilt if it does establish a case from which the jury can find the defendant guilty beyond a reasonable doubt."[6]

I dissent from the majority's disposition since, in my opinion, the totality of the circumstances established by "all the

1. Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127 (1954), rehearing denied 348 U.S. 932. 75 S.Ct. 334, 99 L.Ed. 731 (1955).

2. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). To the same effect see Fox v. United States, 381 F.2d 125, 128 (9 Cir. 1967); United States v. Buckley, 379 F.2d 424, 426 (7 Cir. 1967), cert. den. 389 U.S. 929, 88 S.Ct. 289, 19 L.Ed.2d 280; United States v. Malfi, 264 F.2d 147, 150 (3 Cir. 1959), cert. den. 361 U.S. 817, 80 S.Ct. 57, 4 L.Ed.2d 63.

3. Moore v. United States, 271 F.2d 564, 568 (4 Cir. 1959).

4. In Rodella v. United States, 286 F.2d 306 (9 Cir. 1960), cert. den. 365 U.S. 889, 81 S.Ct. 1042, 6 L.Ed.2d 199 (1961), the Court said (p. 312): "Any attempted differential between direct and circumstantial evidence at times becomes indistinct, *and in law,* unimportant." (emphasis supplied).

In 3 Wharton's Criminal Evidence, 472 (12th ed. 1955) it is said: "As a legal matter, *there is no distinction between direct and circumstantial evidence."* (emphasis supplied).

5. United States v. Raysor, 294 F.2d 563 (3 Cir. 1961). We there said at page 567:

"We note that there is no merit to the contention advanced by the defendant Raysor * * * that his 'possession' of the narcotics sold was not established by 'direct evidence' and that his conviction must be reversed for that reason. Our holding in United States v. Malfi, 3 Cir., 1959, 264 F.2d 147 that 'possession' may be established by circumstantial evidence is dispositive here. Other circuits are in accord: Cellino v. United States, 9 Cir., 1960, 276 F.2d 941; United States v. Pinna, 7 Cir., 1956, 229 F.2d 216; United States v. Pisano, 7 Cir., 1951, 193 F.2d 355, 31 A.L.R.2d 409."

6. United States v. Allard, 240 F.2d 840, 841 (1957), cert. den. sub nom. Fishman

pieces of evidence against the defendant, taken together" made "a strong enough case to let a jury find him guilty beyond a reasonable doubt."

Pratt and his co-defendant Wilson were jointly charged in the indictment with having made an unlawful sale of narcotics, and with aiding and abetting one another in the sale.[7] We have specifically held: "In regard to substantive offenses, it is not necessary that the government show the appellant *personally committed the offenses in question,* for by virtue of 18 U.S.C.A. § 2, an aider or abetter in the commission of crimes is to be treated as a principal." (emphasis supplied, footnote omitted).[8] Further, where two defendants are jointly charged in an indictment with unlawful sale of narcotics, it is immaterial which of the two possessed and/or delivered the narcotics to the purchaser.[9] Moreover, it is settled that proof of "possession" need not be adduced in a prosecution for sale of heroin in violation of §§ 4704(a) and 4705(a), 26 U.S.C.A., since "possession" is not a necessary element of either of the substantive crimes which these two statutes define.[10]

The totality of the circumstances established by the testimony may be summarized as follows:

Federal narcotics agent Moore contacted Pratt's co-defendant Wilson at the Malibu Bar in the North Side area of Pittsburgh in an effort to buy heroin.

Wilson told Moore he would buy the heroin for him. An hour or so later, the two men met again at the bar; Wilson then said he would have to go to the Hill District of Pittsburgh to get the heroin and they then proceeded to drive there in Moore's car. When they reached their destination Wilson asked Moore how many bags of heroin he wanted. Moore said he had $20.00 and Wilson took the $20.00 and said he would get three bags of heroin. Wilson then walked around the corner and there met Pratt and conversed with him for about five minute. No one contacted them during this period. Pratt then left Wilson, turned the corner, walked up to Moore's car, leaned over its windshield and looked Moore over. He then walked back to Wilson and after a brief conversation the two men entered Moore's car, Wilson in front and Pratt in the rear seat. After they did so, Wilson handed Moore two glassine bags of heroin. Moore asked for the third bag. Wilson said he had it and that Pratt and he were going to "shoot it up", and that Pratt had put $4.00 toward its cost. Moore and Wilson then engaged in an argument about the third bag. Pratt interrupted and said "Let's drive out of the area." (The area is a narcotics distribution center.) Pratt then directed Moore to drive him to 1837 Webster Avenue which turned out to be a vacant lot. Pratt and Wilson there left Moore's car and walked through the lot over to Bedford Avenue

---

v. United States, 353 U.S. 939, 77 S.Ct. 814, 1 L.Ed.2d 761 cited and followed in United States v. Giuliano, 263 F.2d 582, 583 (3 Cir. 1959). To the same effect see Eason v. United States, 281 F.2d 818, 821 (9 Cir. 1960).

7. The Indictment charged Pratt and Wilson with violation of §§ 4704(a) and 4705(a), 26 U.S.C.A., and § 2, 18 U.S.C.A.

§ 4704(a) makes it a crime to sell narcotics *"except* in the original stamped package or from the original stamped package," and § 4705(a) makes it a crime to sell narcotics *"except* in pursuance of a written order * * * on a form to be issued for that purpose by the Secretary or his delegate." (emphasis supplied).

§ 2(a) provides: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

8. United States v. Giuliano, 263 F.2d 582, 585 (3 Cir. 1959). See, too, United States v. Monticello, 264 F.2d 47, 50 (3 Cir. 1959).

9. Walker v. United States, 301 F.2d 94, 96 (5 Cir. 1962); United States v. Maroy, 248 F.2d 663, 666 (7 Cir. 1957), cert. den. 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958).

10. United States v. La Rocca, 224 F.2d 859, 860 (2 Cir. 1955); United States v. Brown, 207 F.2d 310, 312 (7 Cir. 1953).

where Pratt actually lived. Ten minutes later Wilson returned to Moore's car and asked to be driven back to the North Side area. Pratt, in his defense, testified that his meeting with Wilson was by chance; Wilson said he would drive him to his home and told him to get into his car; when he walked over to the car he saw Moore sitting in it and then walked back to Wilson and so advised him; several minutes later he and Wilson proceeded to the car and entered it; he didn't hear anything said about narcotics by Moore or Wilson while he was in the car; he didn't supply Wilson with any narcotics; he had been a narcotic addict in the past but was no longer so; he had been convicted several years prior of a narcotics offense and received a suspended sentence and placed on probation; he directed Moore to drive to the Webster Avenue lot because it afforded a "short-cut" to his home on Bedford Avenue; he and Wilson proceeded to his home because Wilson said he had to use the "rest room."

It may here be noted parenthetically that the trial judge for some inexplicable reason refused to permit the prosecution to question Pratt as to the nature of his prior narcotics conviction, albeit he had himself introduced evidence of that conviction.

The majority, as earlier stated, set aside the jury's verdict and directs acquittal because it finds an absence of "proof" of Pratt's involvement in the unlawful sale of heroin and it finds that the evidence merely established the "possibility" of such involvement. In doing so it concedes that the evidence establishes that "[i]t is possible * * * that Pratt gave the two glassine packages of heroin to Wilson during the course of one of their conversations on the street," and "[i]t would appear as if Pratt in his inspection of Moore in Moore's car * * * posssibly was siz-

*ing up a prospective customer."* (emphasis supplied).

It was, however, the jury's function to determine whether the evidence merely pointed to "possibilities" or established beyond a reasonable doubt Pratt's guilt.

Significant and relevant here is this statement in Holland v. United States, *supra,* 348 U.S. at page 140, 75 S.Ct. at page 137, in commenting on the weight of circumstantial evidence in criminal cases and the jury's function with respect to it:

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. *In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more."* (emphasis supplied).

Pertinent here, too, is the following statement in the oft-cited Stoppelli v. United States, 183 F.2d 391, at page 394 (9 Cir. 1950), cert. den. 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631:

"The true administration of criminal justice needs self-restraint on the part of the reviewing court in what is unfortunately sometimes a 'ferreting out' quest for errors in a 'cold record'. The search for justice must not degenerate into a pursuit of complete abstract inerrancy—an unattainable goal when dealing with human beings." [11]

This, too, must be said:

Orozco-Vasquez v. United States, 344 F.2d 827 (9 Cir. 1965), cert. den. sub

---

11. In *Stoppelli,* the court rejected the appellant's contention, similar to that presented here, that the circumstantial evidence upon which his conviction for a narcotics offense was based was insufficient to sustain the jury's guilty verdict.

nom. Buckley v. United States, 386 U.S. 1010, 87 S.Ct. 1354, 18 L.Ed.2d 438 (1967), cited by the majority, is inapposite on its facts. There, the Court found that the Government's evidence established only that the defendant Molano "on one day twice watered a guilty defendant's lawn, and drove that same defendant (his girl friend) to and from an appointment where narcotics were sold, but in which sale he did not participate, *and at which he was not present,*" and "[t]here was never any proof Molano ever had any personal, actual possession of narcotics, nor constructive possession of them, nor *knowledge of their presence in someone else's possession in the car he drove (if they were present).*" (emphasis supplied).

In the instant case, there was unchallenged evidence that Pratt was *present* when the sale of heroin was consummated by its delivery to Moore. Further, the unchallenged evidence established that prior to the sale's consummation, Pratt inspected Moore in Moore's car, "as if" (according to the majority) he "possibly was sizing up a prospective customer." To the foregoing must be added that the majority concedes that under the circumstantial evidence "It is possible * * * that Pratt gave the two glassine packages of heroin to Wilson during the course of one of their conversations on the street."

The only other case cited by the majority, United States v. Duff, 332 F.2d 702 (6 Cir. 1964), is also inapposite on its facts. There the evidence established that one Duff made a sale of narcotics in an apartment which he shared with the defendant Edith Williams. The Court found that "[t]he evidence shows that defendant Williams was a passive spectator to the sale but took no part in it" and set aside her conviction on that ground.

In consonance with what has been said I would affirm the judgment of sentence of the District Court.